**UNITED STATES of America**

v.

**Joseph BONANNO et al., Defendants.**

United States District Court
S. D. New York.

Sept. 30, 1959.

See also 178 F.Supp. 62.

S. Hazard Gillespie, Jr., U. S. Atty. for S. D. New York, New York City, Milton R. Wessel, Sp. Asst. to the Atty. Gen., Marvin B. Segal, Washington, D. C., Edward Brodsky, Brooklyn, N. Y., Louis T. Gallo, East Patterson, N. J., Asst. U. S. Attys., and James W. Knapp, Staff Asst., Crim. Div., Washington, D. C., of counsel, for the United States.

Harry H. Oshrin and Louis Susman, New York City, for defendant Joseph Bonanno.

Maurice Edelbaum, New York City, for defendant Russell A. Bufalino.

Remo A. Allio, Endicott, N. Y., for defendant Ignatius Cannone.

Franken, Kramer, Bam & Nessen, New York City, Maurice N. Nessen, New York City, of counsel, for defendant Paul G. Castellano.

David M. Markowitz, New York City, for defendant Joseph F. Civello.

Maurice Edelbaum, New York City, for defendant Frank Cucchiara.

Henry C. Lavine, Cleveland, Ohio, for defendant John A. DeMarco.

Moses Kove, New York City, for defendant Frank A. DeSimone.

Maurice Edelbaum, New York City, for defendant Natale Evola.

Anthony Calandra, Newark, N. J., for defendant Louis A. Larasso.

Franken, Kramer, Bam & Nessen, New York City, Maurice N. Nessen, New York City, of counsel, for defendant Carmine Lombardozzi.

Edward H. Levine, New York City, for defendant, Joseph Magliocco.

Anthony Calandra, Newark, N. J., for defendant Frank T. Majuri.

Abraham H. Brodsky, New York City, for defendant Michele Miranda.

Frank G. Raichle, Buffalo, N. Y., for defendant John C. Montana.

George Feit, New York City, for defendant John Ormento.

S. Thomas Bianco, Pittston, Pa., for defendant James Osticco.

Henry G. Singer, Brooklyn, N. Y., for defendant Joseph Profaci.

Louis Mansdorf, New York City, for defendant Anthony P. Riela.

Fred H. Mandel, Cleveland, Ohio, for defendant John T. Scalish.

Joseph K. Guerin, New York City, for defendant Angelo J. Sciandra.

Moses Kove, New York City, for defendant Simone Scozzari.

Remo A. Allio, Endicott, N. Y. for defendant Pasquale Turrigiano.

IRVING R. KAUFMAN, District Judge.

Twenty-seven [1] defendants were charged in the first count of the indictment in this action under 18 U.S.C. § 371 [2] with conspiring to defraud the United States, and to violate 18 U.S.C. §§ 1503 and 1621 [3]. Counts two, three and

---

1. Four of the defendants named in the indictment, Salvatore Falcone, Joseph Ida, James V. LaDuca and Antonio Magaddino, have not been apprehended and will not be tried with the remaining twenty-three defendants.

2. "§ 371. *Conspiracy to commit offense or to defraud United States.*

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more

of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

3. "§ 1503. *Influencing or injuring officer, juror or witness generally.*

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or

four charge Joseph Magliocco, Joseph Profaci and Pasquale Turrigiano, also defendants under count one, each with a substantive count of perjury. Briefly stated, the first count of the indictment charges that the defendants and thirty-six co-conspirators not indicted agreed among themselves at a meeting in Apalachin, New York, that if they were asked by anyone, including Federal grand juries, about the nature and circumstances of that meeting they would endeavor to frustrate the inquiry by evasion, silence or lies.

Approximately ninety pretrial motions were filed in this action.[4] Although care-

---

petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

"§ 1621. *Perjury generally.*

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, wilfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both."

4. Determining the precise number of motions filed in this case is difficult since the defendants do not always make clear in their motion papers in how many co-defendant motions they join. Whenever the papers were ambiguous I interpreted them liberally as having moved for relief.

Motions have been made on behalf of all the defendants (1) to dismiss the indictment (various grounds); (2) to order certain paragraphs of the indictment stricken; (3) to order the government to supply a bill of particulars (various particulars sought); (4) to grant a continuance (of various lengths); (5) to order a change of venue; (6) to order the suppression of certain testimony; (7) to hold a hearing on prejudice in this district. In most cases the above motions were duplicated several times over, both omnibus and individual motions having been filed for defendants.

Other motions were made by only some of the defendants: (1) To grant a separate trial (by defendants Bonanno, Bufalino, Castellano, Civello, Cucchiara, Evola, Lombardozzi, Magliocco, Miranda, Ormento, Osticco, Profaci, Riela, Sciandra and Turrigiano); (2) to sever the substantive counts (by defendants Bonanno, Bufalino, Cannone, Castellano, Civello, Cucchiara, Evola, Lombardozzi, Magliocco, Miranda, Ormento, Osticco, Profaci, Riela, Sciandra and Turrigiano); (3) to suppress evidence allegedly seized illegally (by defendant Magliocco); (4) to enjoin statements about the defendants, co-conspirators or trial, by the United States during the pendency of the action (by defendants Profaci and Riela); (5) to dismiss the indictment as to a defendant called before the indicting grand jury while allegedly a prospective defendant (by defendant Profaci); (6) to order discovery of various statements made by the defendants and co-conspirators (by defendants Cannone, Magliocco, Profaci, Riela and Turrigiano); (7) to dismiss the perjury count against one defendant because of the alleged immateriality of his allegedly untrue statements (by defendant Profaci).

Certain of these motions are no longer before the court. The motions for discovery and inspection were mooted when the government voluntarily made available about four thousand pages of transcripts of various statements made by defendants and co-conspirators to divers bodies. The motion to suppress illegally seized evidence was withdrawn, leave having been granted to renew the motion at trial.

ful consideration has been given to each motion separately, it will be most convenient to discuss their disposition by category.

### 1. Motions Seeking Dismissal of the First Count of the Indictment.

The defendants, relying on Grunewald v. United States, 1957, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 and the line of cases preceding it,[5] argue that an indictment that charges a conspiracy to conceal a crime is insufficient and must be dismissed. In the Grunewald case defendants allegedly conspired to procure by bribery and fraud "no-prosecution" rulings in tax cases. Since the statute of limitations on the agreement to procure the rulings had run, the government sought to save its case by alleging a conspiracy among the defendants to conceal their earlier unlawful activity, which conspiracy to conceal continued until the time of indictment. The Supreme Court ruled that the statute of limitations (and incidentally the period during which statements by co-conspirators are admissible under an exception to the hearsay rule) could not be indefinitely extended by alleging even an actual agreement to conceal a completed crime and reversed the conviction.

▉▉▉▉ The indictment in this case, however, does not charge a conspiracy to conceal another crime, but alleges rather a conspiracy to violate three specific Federal statutes. Those statutes make defrauding the United States, obstructing justice and committing perjury criminal, and merely involve activity that may be considered a species of concealment. One who agrees to lie agrees to "conceal" the truth; obstruction of justice may well take the form of "concealing" from an authorized tribunal information germane to its functions. But, it cannot be contended, that perjury and obstruction of justice, or conspiracy to commit either, are no longer crimes after the Grunewald case.

In fact, the Supreme Court was well aware of this distinction. It noted in Grunewald that:

> " * * * a vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objective of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." Grunewald v. United States, supra, 353 U.S. at page 405, 77 S.Ct. at page 974 (emphasis in original). See also Ingram v. United States, 1959, 360 U.S. 672, 679, n. 10, 79 S.Ct. 1314, 3 L.Ed.2d 1503.

The main objective of the conspiracy in this case was "concealment" the commission of fraud, perjury and obstruction of justice.

▉▉▉▉ I am mindful of the fact that even though this distinction from Grunewald exists in this case, the statute of limitations for conspiracies such as are charged in this indictment is indefinitely extended. But, that is as it should be. The distinction between conspiracies of the kind charged in Grunewald and the instant one is not merely formal. The statute of limitations in a criminal case serves not only to bar prosecutions on aged and untrustworthy evidence, but it also serves to cut off prosecution for crimes a reasonable time after completion, when no further danger to society is contemplated from the criminal activity. See Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 963 (1959). A continuing conspiracy is a continuing danger. It is not surprising, therefore, that the statute of limitations runs from the last objective act that indicates that the original agreement, and the danger arising therefrom, is still alive. Grunewald v. United States, supra, 353 U.S. at pages 396–397, 77 S.Ct. at pages 969–970; Ware v. United States, 8 Cir., 154 F. 577, 579, 12 L.R.A.,N.S., 1053, certiorari denied 1907, 207 U.S. 588, 28 S.

---

5. See Lutwak v. United States, 1953, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790.

Ct. 255, 52 L.Ed. 353. The main danger arising from a conspiracy fraudulently to procure treasury rulings ends when that purpose is attained, and thus it is wise in such situations not infinitely to extend the statute of limitations. But when the end or ends of a conspiracy have not been attained, the conspiracy should be considered alive so long as the danger of fruition lives. In such cases it is not that the statute of limitations has been extended but that the ends of the conspirators were pitched far in advance by their original agreement. Certainly it should be open to the government to interrupt an unlawful combination at any time before it reaches fruition. And, indeed, the Grunewald case itself was remanded with orders to submit to the jury the government theory that the end contemplated by the conspirators, to wit, procuring complete immunity for the defendants' "clients" rather than just "no-prosecution" rulings, had not in fact been achieved. See Grunewald v. United States, supra, 353 U.S. at page 415, 77 S.Ct. at page 979.

I am compelled to conclude, therefore, that nothing in Grunewald v. United States, supra, or the line of cases that preceded it requires the dismissal of the indictment in this case.

Turning from Grunewald v. United States, some of the defendants argue for dismissal of the indictment on the ground that the trial of this case would be so massive and confusing as to be violative of the Fifth Amendment of the Constitution.

It is true that a trial so massive and complicated that no jury could follow the evidence or separate defendants from each other would be a deprivation of due process. See Note, Federal Treatment of Multiple Conspiracies, 57 Colum.L.Rev. 387, 403–04 (1957); cf. Gwathmey v. United States, 5 Cir., 1954, 215 F.2d 148 (civil condemnation suit).

But while the difficulties inherent in mass trials are formidable they are not insurmountable. Twenty-three defendants will be tried in this case, but larger trials have been effectively handled in the past and affirmed on appeal. See, e. g. Capriola v. United States, 7 Cir., 1932, 61 F.2d 5, certiorari denied Walsh v. United States, 1933, 287 U.S. 671, 53 S.Ct. 315, 77 L.Ed. 579 (59 defendants); Allen v. United States, 7 Cir., 1924, 4 F.2d 688, 698, certiorari denied Hunter v. United States, 1925, 267 U.S. 597, 45 S.Ct. 352, 69 L.Ed. 806 (75 defendants). See also United States v. Stromberg, 2 Cir., 268 F.2d 256 (18 defendants). There are no special factors apparent at this stage of the proceeding that indicate that a fair trial cannot be had. Certainly there is no merit in dismissing an indictment merely because it is asserted that prejudicial error might be committed at the trial.

Nor is the indictment in this case too vague. All an indictment need do in order to withstand a motion to dismiss is "sufficiently apprise the defendant of what he must be prepared to meet", United States v. Smith, 3 Cir., 1956, 232 F.2d 570, 572 and give him the basis of a plea of former jeopardy. See United States v. Behrman, 1922, 258 U.S. 280, 288, 42 S.Ct. 303, 66 L.Ed. 619.

"The particularity of time, place, circumstances, causes, etc. * * * is not essential to an indictment." Glasser v. United States, 1942, 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L.Ed. 680. In effect, it is merely necessary that the elements of a conspiracy be set forth with sufficient particularity for the defendants to understand what they are charged with having conspired to do. In the instant case the conspiracy is charged with clarity, to defraud, obstruct and lie to any inquiry.[6] The breadth of an unlawful agreement cannot bar the government from prosecuting it. The correct remedy

---

6. Though it does not bind all the defendants, it should be noted that at least some of the attorneys, as we note from their briefs, understood the government theory well enough. See Mr. Nessen's brief for all defendants, pp. 4, 6; Mr. Lavine's brief for defendant DeMarco, p. 14.

for one faced with a broad but otherwise sufficient indictment is not dismissal but a bill of particulars. Cefalu v. United States, 10 Cir., 1956, 234 F.2d 522, 524.

Some of the defendants argue further that in any event the indictment must be dismissed because the agreement as charged does not embrace any contemplated conduct made unlawful by either 18 U.S.C. §§ 1503 [7] or 371 [8].

 Indeed, it has been held that the broad final clause of § 1503, making unlawful activity which "* * * corruptly * * * influences, obstructs, or impedes * * * the due administration of justice * * *," must be construed to embrace only acts "similar in nature" to those enumerated by the preceding specific clauses. Haili v. United States, 9 Cir., 1958, 260 F.2d 744, 746. The defendants argue, in effect, that since none of those preceding clauses is precisely met, the indictment in this case, which charges a conspiracy that embraces obstructing justice by giving false and evasive testimony to Federal grand juries, is insufficient. But, a reading of the section in its entirety makes clear that the purpose of the statute is to render illegal interference with the judicial functions of the United States, and that the final clause was added in order to cover those means of interference the draftsmen were not prescient enough to enumerate. Thus, while § 1503 might not apply to the correctional or investigatory arms of the government, see Haili v. United States, supra; United States v. Scoratow, D.C.W.D.Pa.1956, 137 F.Supp. 620 (obstruction of the F.B.I.), certainly obstruction of grand jury functions is within the purview of the statute. See United States v. Siegel, D.C.S.D.N.Y. 1957, 152 F.Supp. 370; United States v. Solow, D.C.S.D.N.Y.1956, 138 F.Supp. 812, 814.

 As for the argument that the contemplated obstructive behavior charged in the indictment cannot be described as "defrauding" the government for purposes of § 371, it is well established that the "fraud" involved need not be pecuniary. See, e. g. United States v. Klein, 2 Cir., 1957, 247 F.2d 908, 916, certiorari denied 1958, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354. Further, in the leading Supreme Court case the court said that a conspiracy "* * * to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest," would state a crime against the government under the statute. Hammerschmidt v. United States, 1924, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968. Section 371 is a broad statute designed to deal with unlawful means of interferences with governmental functions. See Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 944 (1959). And the same allegations that supported a prosecution for conspiracy to obstruct justice have been found sufficient upon which to base a count under § 371 before. Outlaw v. United States, 5 Cir., 81 F.2d 805, 807, certiorari denied 1936, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389. ("The United States were here to be defrauded of doing justice.") Thus though §§ 1503 and 371 overlap to some extent, this is not a reason to bar a prosecution under either of them.

In any event, since the allegations under both sections deal with the same facts, will be supported at trial by the same evidence, and will receive substantially the same charge, I can see no prejudice resulting to the defendants. If it appears at the trial that there is likelihood of any, it can be dealt with at that time.

 Finally, the defendants address a series of arguments in support of their motions to dismiss, to the status of the Federal Grand Juries which they allegedly conspired to obstruct and mislead. The argument that the indictment is deficient because it does not allege that there was a particular grand jury in session at the moment when the alleged conspiracy was formed need not detain us. This indictment charges a conspiracy to

**7.** See note 3 supra.

**8.** See note 2 supra.

obstruct and mislead grand juries to be convened, the last overt act in furtherance of which was committed only a few days before the filing of the indictment. See United States v. Perlstein, 3 Cir., 126 F.2d 789, 796–797, certiorari denied 1942, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752. Also, unlike Ingram v. United States, supra, this indictment alleges knowledge on the part of the defendants sufficient upon which to base a finding of anti-federal intent.

■ The defendants argue that they cannot be charged with conspiring to obstruct justice by interfering with the grand jury investigations into the gathering at Apalachin, because it is not alleged that anything unlawful took place at that gathering and grand juries have no power to investigate gatherings which they characterize as proper.

The grand jury is an important investigative body with broad powers and functions. United States v. Cleary, 2 Cir., 1959, 265 F.2d 459, 461.

> "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." Blair v. United States, 1919, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979.

Undoubtedly a point may be reached where the grand jury inquiry is so divorced from any possibility of uncovering or charging a crime that its investigation may be considered void. But I need not undertake gratuitously to discuss when that point is reached, since it certainly was not reached in this case. It is alleged in the indictment that at the time of the gathering at Apalachin, into which the indicting grand jury was inquiring, several of the defendants were under investigation in this district for other alleged offenses. If only two of these defendants had previously been before a grand jury and subsequently met together and with others, it would be within the province of a grand jury engaged in the due administration of justice to inquire into the purpose, motive and other surrounding circumstances of that meeting. The point is that this grand jury was not embarking on a fanciful journey. From the face of the indictment it would appear that it had a legitimate and reasonable interest in ascertaining, among other things, whether some of these individuals who had appeared before other grand juries might be laying the foundation for their conduct in future investigations, should any ensue. It is not for those subpoenaed before grand juries to set up their own standards of what is or is not the legitimate business of the grand jury. If such a principle were adopted every man would become a law unto himself and the work of grand juries would come to a halt.

■ Defendant Profaci moves in his own behalf for dismissal of counts one and three on the ground that he was called before the indicting grand jury while a prospective defendant. Since it is not alleged in his affidavit that he was not warned of his constitutional right to refrain from incriminating himself, his position must be taken to be that in no event may a prospective defendant be called before an indicting grand jury. Such a contention is clearly unsound. See United States v. Cleary, supra; United States v. Scully, 2 Cir., 225 F.2d 113, 116, certiorari denied 1955, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788. The defendant apparently misreads Lawn v. United States, 1958, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321. That case holds at most that a prospective defendant must be warned of his right to refuse to answer questions before a grand jury. See Orfield, The Federal Grand Jury, 1959, 22 F.R.D. 417, 431–432.

All motions to dismiss the indictment are denied.

### 2. Motion to Strike Paragraphs of the Indictment

A motion has been made under Rule 7(d) of the Federal Rules of Criminal

Procedure, 18 U.S.C.A., for an order striking certain portions [9] of the indictment as prejudicial surplusage.

■ It is not sufficient in order to be successful on a motion such as this, merely to point to language in the indictment that is not absolutely necessary. See United States v. New York Great Atlantic & Pacific Tea Co., 5 Cir., 137 F.2d 459, 462–463, certiorari denied 1943, 320 U.S. 783, 64 S.Ct. 191, 88 L.Ed. 471. It is necessary that the language challenged be inflammatory and prejudicial. United States v. Klein, D.C.S.D.N.Y.1954, 124 F. Supp. 476, 479–480. The danger to be protected against is that material prejudicial and otherwise inadmissible will be conveyed to the jury when the indictment is read.

■ In the instant indictment one paragraph [10] contains prejudicial surplusage. It is, therefore, ordered that the words

> "into racketeering and criminal syndicates with particular emphasis upon their activities in the ladies' garment-trucking industry, labor management field, and the narcotics traffic,"

be stricken from paragraph 2 of the indictment.

As to all other portions of the indictment, the motion to strike is denied.[11]

### 3. Motions Requesting a Severance of Defendants or of Substantive Counts.

A majority of the defendants have moved under Rule 14 of the Federal Rules of Criminal Procedure for an order granting each of them a separate trial, or at least granting a separation of the defendants into several groups for separate trial. They argue that because of the large number of defendants named in the indictment, a single trial for all will be unwieldy, unduly burdensome, and will tend to obstruct the jurors in giving separate and impartial consideration to each of the parties in the case.

■ Motions for severance are addressed to the discretion of the District Court. Opper v. United States, 1954, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101. Where proof of the charges against all the defendants is largely dependent upon the same evidence, and the alleged acts are of the same or similar character, severance should not be granted except for the most cogent reasons. United States v. Cohen, 2 Cir., 1941, 124 F.2d 164, certiorari denied Bernstein v. United States, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210, rehearing denied 1942, 316 U.S. 707, 62 S.Ct. 941, 86 L.Ed. 1774; United States v. Silverman, D.C.D.Conn.1955, 129 F. Supp. 496, 500. As I noted earlier in this opinion, multi-defendant trials have been effectively handled in the past. See, e. g. Capriola v. United States, 7 Cir., 1932, 61 F.2d 5, certiorari denied Walsh v. United States, 1933, 287 U.S. 671, 53 S.Ct. 315, 77 L.Ed. 579; United States v. Stromberg, 2 Cir., 268 F.2d 256. A trial of many defendants can be conducted with care and decorum so that the court can place whatever safeguards commend themselves in its effort to afford each defendant a separate and impartial consideration of his case. By taking care in charging and marshalling evidence at the end of the trial, the judge can materially aid the jury in successfully considering each defendant separately. See Note,

---

9. Paragraphs 2, 3, 4, 5, 8 and 10.

10. "2. That, further, as the said defendants and their co-conspirators well knew, a special investigation had been commenced by a United States Grand Jury in March of 1956 in the United States District Court for the Southern District of New York into racketeering and criminal syndicates with particular emphasis upon their activities in the ladies' garment-trucking industry, labor management field, and the narcotics traffic, and has continued before Federal Grand Juries up until the date of the filing of this indictment."

11. The objection to the other paragraphs seems to be that their inclusion will allow the presentation of irrelevant and prejudicial evidence. This cannot be determined at this time and can be dealt with at the trial by an appropriate motion or objection.

The Challenge of the Mass Trial, 68 Harv.L.Rev. 1046, 1051 (1955). It lacks merit to argue at this posture of the case that unfairness at trial is a necessary result of this indictment.

██ The value to a defendant of a separate trial must be measured against its possible prejudicial effect on the government; see United States v. Diogardi, D.C.S.D.N.Y.1956, 20 F.R.D. 10, 12, while at the same time I am convinced that fairness to defendants is far more important than governmental convenience. The present case is expected to last at least seven weeks with the charges against all the defendants provable for the most part by the same evidence. In fact, the nature of the conspiracy charged in this indictment is such that giving each defendant a separate trial would result in twenty-three trials, each almost as long as the one trial of twenty-three defendants. This is so because the indictment charges an agreement among the defendants and unindicted co-conspirators, which appears to have been entered into at the same time and place, to embark upon a pattern of deception involving all of them. Thus evidence of the pattern would have to be introduced in each separate trial, and instead of there being one trial of twenty-three defendants and forty co-conspirators, there would be twenty-three trials of one defendant and sixty-two co-conspirators. In either case the jury would be presented with evidence of a unified conspiracy among sixty-three persons.

Furthermore, there are factors peculiar to the type of conspiracy charged in this indictment which militate in favor of a single trial. Charged here is a single conspiracy contemplating a single end: concealment of the details of an alleged meeting. Whatever the guilt of the defendants, if proved, it will be of the same magnitude for each, and disclose involve-ment, if any, of the same degree. Neither a "wheel" conspiracy, see Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, nor a "chain" conspiracy, see United States v. Bruno, 2 Cir., 105 F.2d 921, reversed 1939, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 is charged here. In such conspiracies there is danger that central figures will be lumped at trial with defendants of lesser involvement, and that evidence of persons unknown to the defendant, of differing degrees of complicity, will be admitted against him. See Developments in the Law—Criminal Conspiracy, 72 Harv.L. Rev. 920, 984–987 (1959). The instant indictment alleges rather an agreement on a single "level" for a single end, the achievement of which could be frustrated by the defection of a single party.

This case, then, is particularly well fitted for unified prosecution. Though large trials do impose added difficulties, see Krulewitch v. United States, 1949, 336 U.S. 440, 445–458, 69 S.Ct. 716, 719–725, 93 L.Ed 790 (concurring opinion by Mr. Justice Jackson), there are also compensations. The government too has a difficult job of effectively presenting large amounts of evidence pertaining to many persons. Furthermore, who can say but that it may be more prejudicial to a defendant for a jury to focus on him singly evidence of the alleged conspiracy. Still further, each defendant will effectively have the services of the able counsel for the other defendants, no small advantage in the cross-examination of witnesses. See Allen v. United States, 7 Cir., 1924, 4 F.2d 688, 699.

██ The problems raised by the motions to sever the substantive perjury counts from the conspiracy count of the indictment are closely allied. Certainly, the joinder of counts is proper under Rule 8(a) of the Federal Rules of Criminal Procedure.[12] That the acts in fur-

12. "Rule 8(a). *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

therance of a conspiracy to obstruct justice are of a "similar" character to acts of actual perjury to grand juries, and are "connected together or constituting parts of a common scheme or plan" is clearly beyond argument. I am well aware that Rule 14 allows severance upon a showing of prejudice even when joinder is technically proper. See United States v. Central Supply Ass'n, D.C.N.D.Ohio 1947, 6 F.R.D. 526, 533. But no such showing has been made in this case. The proof will be substantially the same under all counts. In a separate trial of the perjury counts evidence of the alleged conspiracy would be admissible to show motive for the alleged perjury. See 1 Wigmore, Evidence § 102 (3d ed. 1940). Conversely, evidence of the alleged perjurious statements would be admissible as overt acts in furtherance of the conspiracy, if that count were separately tried. See Developments in the Law— Criminal Conspiracy, 72 Harv.L.Rev. 920, 984 (1959). Indeed, the acts of perjury charged are listed as overt acts in the present indictment.

Furthermore, this is not a case where crimes of different gravity are joined, to the prejudice of one group of defendants, as would be the case, for instance, if a substantive count charging murder of a witness were joined with a count alleging conspiracy to obstruct justice.

I conclude, therefore, that the joinder of counts in this indictment is not prejudicial to the defendants.

One special problem arises as to severance with respect to the three defendants charged with perjury. It has been argued that the misstatements charged will force the defendants to take contradictory positions at the trial, so that a jury believing one would have to find the other or others a perjurer. Without going into detail, I do not see that any of the statements specifically charged in the indictment as conscious untruths will require the defendants to take positions at trial inconsistent to each other. While the abstracts of testimony included in the indictment disclose a conflict between de-

fendants Magliocco and Profaci as to whether the former knew his destination was the Barbara home in Apalachin before he arrived there, [compare Indictment pages 10 and 11 with page 17], defendant Profaci is not charged with lying as to that particular. Thus he will not have to contend at trial, in order to defend against the count of perjury charged to him, that he told defendant Magliocco the destination. Thus, even though a conflict of testimony between the two is disclosed, it will not necessarily lead to inconsistent positions being taken at trial.

If at trial it should appear that the trial is becoming too unwieldy, or that the continued presence of some of the counts or some of the defendants is prejudicial, I shall be in a better position to appraise the situation upon a renewal of the instant motion.

The motions to sever are denied.

#### 4. Motion to Dismiss Count Three of the Indictment.

■ Defendant Profaci moves for dismissal of count three of the indictment, charging him with perjury before a Federal grand jury. He argues that the statements charged as untrue were in any event immaterial to that body's inquiry.

A knowingly false statement to a grand jury is material and sufficient upon which to base a prosecution for perjury if it " * * * has a natural * * * tendency to influence, impede, or dissuade the grand jury from pursuing its investigation * * *." United States v. Hirsch, 2 Cir., 1943, 136 F.2d 976, 977; United States v. Rose, D.C.M.D.Pa.1953, 113 F.Supp. 775, 777, reversed on other grounds 3 Cir., 1954, 215 F.2d 617. It is not necessary that a truthful answer would actually have made the inquiry more successful. United States v. Goldstein, 2 Cir., 1948, 168 F.2d 666, 671.

■ Defendant Profaci is charged with having committed perjury in saying (1) that he observed but a few people

and cars at the Apalachin gathering and (2) that defendant Magliocco stayed in the car after they arrived. Such false information would undoubtedly have a tendency to impede the grand jury investigation then under way. That grand jury was investigating the gathering at Apalachin. It had sufficient reason for its interest in that gathering, as I have already indicated in my discussion on the motion to dismiss the indictment. Certainly, it had a right to inquire as to the purpose of the meeting under the circumstances present here. Among other things the grand jury would have had an interest in determining whether persons previously questioned by other grand juries in the same district were present and if so, with whom they met and their purpose in meeting. The inquiry as to the identity of the persons attending tends to define the purpose of the meeting and the subject matter under discussion. The inquiry as to the number attending serves to some extent to determine its scope.

Therefore, the motion to dismiss count three of the indictment is denied.

### 5. Motions for Bills of Particulars

 Fifteen of the defendants have moved under Rule 7(f) of the Federal Rules of Criminal Procedure for bills of particulars.[13] A statement of a few of the basic principles applicable to this type of motion is in order. It is elementary that a motion for a bill of particulars is addressed to the sound discretion of the trial court. Rosen v. United States, 1896,

161 U.S. 29, 40, 16 S.Ct. 434, 480, 40 L. Ed. 606; Wong Tai v. United States, 1927, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L. Ed. 545. The defendant is generally held to be entitled to those particulars necessary to enable him to prepare his defense, avoid surprise and plead double jeopardy. United States v. Klein, D.C.S.D.N.Y.1954, 124 F.Supp. 476, 479, affirmed 2 Cir., 1957, 247 F.2d 908, certiorari denied 1958, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed. 2d 354. The fact that affording the defendant such protection may, in some cases, require some disclosure of the government's evidence is not a bar to the relief where the particulars demanded are, in fact, necessary to the preparation of the defense. United States v. Kessler, D.C.E.D.N.Y.1942, 43 F.Supp. 408, 412. On the other hand, the government should not be forced unnecessarily to disclose its evidence and witnesses in advance of trial. United States v. Dilliard, 2 Cir., 1938, 101 F.2d 829, 835, certiorari denied 1939, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1036.

 I have carefully examined the demands for particulars of the defendants in this case in the light of the foregoing principles. Accordingly the government is directed to serve upon all of the defendants within ten days of the date hereof a bill of particulars which shall set forth the following in respect to count one of this indictment:

(1) *Paragraph 1:* The government will state whether it claims the conspiracy charged in paragraph 1 was commenced at the meeting alleged to have taken place in paragraph 3.[14]

---

13. Miranda, Bonanno, Sciandra, Osticco, Civello, Cannone, Ormento, Riela, Profaci, Turrigiano, Cucchiara, Evola, Bufalino, Castellano and Lombardozzi. The latter two defendants made their motions in behalf of all of the defendants. Riela, by agreement, adopted Profaci's motion in its entirety.

14. As a general rule it has been the policy of the courts to deny demands for minute particulars as to the formation of the conspiracy or as to the acts of the de-

fendants pursuant to it but as to which the particular count makes no charge. United States v. Lieberman, D.C.S.D. N.Y.1953, 15 F.R.D. 278, 281; Rubio v. United States, 9 Cir., 22 F.2d 766, 767, certiorari denied 1927, 276 U.S. 619, 48 S.Ct. 213, 72 L.Ed. 734. In the instant case I have been liberal in my determination of the defendants' demands to insure that they will have all the material necessary to prepare their defense and to plead double jeopardy. In view of this

(2) *Paragraph 2:* The government is directed to identify the Federal Grand Juries it will claim were carrying on the special investigation referred to in paragraph 2. It will state the district in which each such Grand Jury was impaneled, the date of its first session and the date of its final session.

(3) *Paragraph 3:* The government is directed to state the names of the defendants and co-conspirators who it will claim were involved in the special investigation as charged in paragraph 3.

(4) *Paragraph 4:* The government is directed to identify the Grand Juries of the United States which it will claim were conducting an investigation into the alleged meeting as charged in paragraph 4. It will state as to each such Grand Jury the district in which it was impaneled, the date of its first session and the date of its final session. The government is further directed to specify which of the defendants and their co-conspirators it will claim were subpoenaed to appear before the respective Grand Juries as charged in paragraph 4. It will also state which of the said defendants and co-conspirators it will claim gave testimony before the said Grand Juries.

(5) *Paragraph 6:* The government is directed to specify the nature of any conduct, other than the giving of testimony or statements, which it will claim was contumacious as charged in paragraph 6. It will further specify which of the defendants and co-conspirators it will claim engaged in and conspired to engage in such conduct.

The government is further directed to specify whether the "aforesaid Grand Juries" referred to in paragraph 6 are those also referred to in paragraph 4. If not, the government is directed to identify the Grand Juries referred to by giving the district in which each was impaneled, the date of its first session and the date of its final session.[15]

(6) *Paragraph 8:* The government is directed to identify the United States District Courts which are referred to in paragraph 8 by use of the term "elsewhere", by stating the district in which such courts are located. The government is further directed to specify the nature of any conduct, other than the giving of testimony or statements, which it will claim was contumacious and the identity of the defendants and co-conspirators it will claim engaged in or conspired to engage in such conduct.

(7) *Paragraph 10:* The government is directed to specify in what manner it will claim the defendants and their co-conspirators conspired to defeat the lawful governmental functions of the United States as charged in paragraph 10.

 In all other respects the motions are denied. The balance of the demands seek minute information of a type to which the defendants are clearly not entitled. They seek information as to the exact details of the alleged meeting; specification of all of the acts claimed to have been done in entering into and furthering the conspiracy; whether the government intends to prove the conspiracy by direct or circumstantial evidence and information of a similar nature.

 The test as to the validity of a demand for particulars is not whether the information sought is useful to the defense, but whether it is necessary. The time, the place and the purpose of the conspiracy are sufficiently fixed in count one and in the overt acts which are included in that count. To require the government to set forth every discussion held between the alleged conspirators at

---

I conclude that some further clarification of the government's claim as to the time of the commencement of the conspiracy is necessary.

15. The same demands have been made for specification as to the "said Grand Juries" referred to in paragraphs 7 and 9. The same direction is given to the government in respect to those paragraphs.

the gathering in Apalachin or elsewhere, or to set forth all of the purposes of such meeting and information of a similar character would be requiring it to make a complete discovery of its entire case and forcing it to reveal information not necessary to the preparation of the defense. This is not the function of a bill of particulars. If, at the trial, evidence is offered which takes the defense by surprise, the court, upon motion made, has the power to grant a continuance. See United States v. Lieberman, D.C.S.D. N.Y.1953, 15 F.R.D. 278.

Several of the moving defendants have demanded that copies of their testimony or statements and/or those of their co-defendants and co-conspirators be set forth. While this information is beyond the province of a bill of particulars, it has, in any event, been made available to the defendants.[16]

The motions are denied with the exceptions noted above.

## 6. Motions to Change Venue or Grant a Continuance.

The defendants have devoted the greater part of their respective discussions to the publicity that has thus far surrounded the case and the events leading up to it. In general, these motions request either a change to a "less prejudiced" venue or a postponement of trial until the objectionable publicity dies down.[17]

 These motions are addressed to the discretion of the trial judge. He is in the best position to determine the effect of publicity on the fairness of the trial. United States v. Bando, 2 Cir., 244 F.2d 833, 838, certiorari denied 1957, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53 (Riesel acid throwing case). It is his duty to take all steps necessary to assure the defendants a fair and unprejudiced trial. See United States v. Dioguardi, D.C.S.D. N.Y.1956, 147 F.Supp. 421 (continuance granted); United States v. Florio, D.C. S.D.N.Y.1952, 13 F.R.D. 296 (change of venue granted). On the other hand, if

---

16. The government has voluntarily made available to the defense over 4,000 pages of transcripts of testimony and statements of defendants and co-conspirators which it intends to offer in evidence. See note 4 supra.

17. Closely allied motions requested that a hearing be held to determine the extent of the prejudice in this district and that the government be enjoined from making any public statements about this case or the persons involved therein. In response to these motions I allowed a subpoena to be served to procure films, tapes, scripts, etc. disclosing the nature and scope of local publicity for presentation to the court, and requested the prosecution from the bench to use its best efforts to assure that no objectionable material emanate from the government during the pendency of this action. It should be noted that the government successfully intervened to postpone three television programs dealing with some aspects of the gathering at Apalachin which had been scheduled for presentation. This would indicate a spirit on its part to play down the pre-trial publicity on this case.

Counsel for defendants Castellano and Lombardozzi has advised me that he has had much difficulty in procuring all the

subpoenaed data from one of the broadcasting companies within the time originally granted. This case is a good illustration of the use of pretrial in protracted criminal cases. All counsel were advised at a hearing held on June 22, 1959 that all defendants' papers were due by August 17, 1959, that government papers were due August 26, 1959, and that argument on all pretrial motions would be held September 10, 1959. All counsel have complied with these requirements except in the respect noted. I do not anticipate that the data sought from the broadcasting company will be substantially different from the exhibits previously submitted, but will merely be of a cumulative nature. However, counsel may have three days from the filing of this opinion to submit additional data, and if after submission I am of the opinion that my decision should be reconsidered, I shall do so. All counsel have been given several months to prepare for trial in this case, now set to commence on October 26, 1959. I have made my decision on the pretrial motions with dispatch, so that all counsel would know sufficiently in advance of trial the rulings on their respective motions. In the interest of the other defendants, I do not deem it wise to delay my rulings any further.

the trial judge determines that a fair trial can be had at the time and place scheduled, he ought not refuse to let the prosecution proceed merely because publicity has surrounded the defendants and their alleged crime. See United States v. Bando, supra; United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 226, affirmed 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; cf. United States v. Weber, 2 Cir., 1952, 197 F.2d 237, 239. See generally United States v. Hoffa, D.C.S.D.N.Y. 1957, 156 F.Supp. 495, 500–509 for an extensive review of State and Federal cases.

 A study of the cases dealing with the problem of pre-trial publicity indicates that four main factors should be considered in deciding if relief of some kind should be granted at this stage of the proceedings. First, it is necessary that the publicity be recent, widespread and highly damaging to the defendants. Second, it is an important consideration whether the government was responsible for the publication of the objectionable material, or if it emanated from independent sources. This factor is especially significant in regard to the third factor, the inconvenience to the government and the administration of justice of a change of venue or continuance. The government can hardly be heard to complain of inconvenience if it was responsible for the dissemination of damaging material. In fact, governmental complicity was almost singularly dispositive in the leading case in which a trial judge's discretion was reversed, see Delaney v. United States, 1 Cir., 1952, 199 F.2d 107, though the publicity in that case was particularly virulent and was concentrated on the eve of trial. Last, it must be considered whether a substantially better panel can be sworn at another time or place.

 In the instant case the attendant publicity has not been local but widespread. It has also been critical of the defendants. However, an infinitesimal amount of it may be attributed to agents, officials or employees of the government.

Furthermore, though sporadic publicity has continued, it has been concentrated in two periods, the time of the Apalachin gathering and the time of the arrests of the present defendants. The later of these two events occurred about five months before the date now set for trial. Nor, is this a case where granting the requests of the defendants would entail little or no inconvenience to the government or the courts. See United States v. Florio, supra. In this action thousands of pages of testimony previously taken will most likely be read to the jury. Furthermore, a great many witnesses will be called, most of them living in or near this district. To transfer or postpone this case would seriously prejudice the government and extraordinarily complicate the work of the courts, without materially helping the defendants. Trying this case in a less cosmopolitan community would probably result in a greater ultimate concentration of publicity in the minds of prospective jurors and no city community has been suggested where the publicity has been or would be substantially less than in New York. Trying it at a later time would not, in the circumstances of this case, substantially aid the defendants. As was said in a recent case involving a figure of much public comment,

> "The denial of a motion for an indefinite or substantial continuance predicated upon widespread adverse pretrial publicity about a defendant is all the more warranted when, as here, there is sound reason to believe that the defendant will continue to be a controversial, publicity-invoking figure and, hence, that there is little assurance that the passage of time will result in an abatement or subsistence of critical publicity in the foreseeable future." United States v. Hoffa, supra, 156 F.Supp. at page 500.

Since a fair trial can be obtained in this district, it is in the interest of all parties that it take place without further delay, lest some unforeseen publicity

create problems not now existent. See United States v. Dennis, supra, 183 F.2d at page 226.

I am mindful of the fact that the Supreme Court has recently expressed itself in regard to the treatment of out-of-court publicity. Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed. 2d 1250. But that case, though urged strongly upon me by the defense, is not really in point. There, information specifically ruled inadmissible by the trial judge found its way to the jury during the course of the trial. While the judge called the jurors into chambers and received their assurance that they were not prejudiced, the Supreme Court reversed the conviction. It should be emphasized, however, that in Marshall the defense had no opportunity to determine the effect of the publicity for itself, the voir dire examination having already been held. The practice of voir dire examination of prospective jurors is perhaps the most important safeguard against prejudiced jurors in the administration of criminal justice. See United States v. Bando, supra, 244 F.2d at page 838. In order to strengthen its protection, I have decided to award the defense 42 peremptory challenges, which is 32 more than is required by the Federal Rules of Criminal Procedure, while the government will be held to its 6 challenges. In addition, at the time of selection of the jury, the Court will excuse any prospective juror who gives evidence of being unable to serve fairly and impartially in this case. Furthermore, if at the time of selection it appears to me that an unprejudiced panel cannot be sworn, there will be time enough then for me to take the necessary steps to assure the defendants a fair trial. In light of the circumstances, as they presently appear, however, the motions to change venue and postpone the trial must be denied.[18]

So ordered.

18. Motions have been made to suppress testimony given to the New York State Commission of Investigation under a grant of immunity. I have held a hearing to determine whether any action on the part of the government induced the state authorities to grant the immunity. Consequently, I shall decide the motions to suppress such testimony in a separate opinion. See 178 F.Supp. 62.