UNITED STATES of America

v.

Dominick CORRADO et al., Defendants.

No. 69 Cr. 569.

United States District Court
S. D. New York.

Dec. 12, 1969.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, for United States, James W. Brannigan, Jr., Asst. U. S. Atty., of counsel.

William J. Weinstein, Detroit, Mich., for defendant, Dominick Corrado, Bernard Helfenstein, Brooklyn, N. Y., of counsel.

## OPINION

FRANKEL, District Judge.

Dominick Corrado moves to dismiss or, alternatively, for various other forms of relief against a four-count indictment, three counts of which name him and others as defendants.

The indictment, filed July 22, 1969, charges in its first count that Corrado, twelve other named defendants and other persons unnamed conspired (1) to violate 18 U.S.C. §§ 1952 and 1954 by offering kickbacks to influence the actions of defendant David Wenger, as an agent of the Central States, Southeast and Southwest Pension Fund of the Teamsters Union (the "Fund"), touching a mortgage loan application to the Fund from Mid-City Development Company, and (2) to travel interstate intending to bribe Wenger in violation of New York law. The conspiracy is alleged to have begun about February 1, 1964, and to have continued to the date of the indictment. Overt acts are alleged as having occurred on or about July 31 and in August, 1964.

The second count charges that Corrado and his twelve codefendants violated § 1954 by (a) traveling interstate, on or about July 31, 1964, with intent to promote, and distribute the proceeds of, the bribery of Wenger, and (b) thereafter attempting and performing acts in furtherance of those objectives. Count Three charges all defendants except Wenger with offering, or aiding and abetting the offering of, a kickback to Wenger to influence his actions respecting the mortgage loan. (Count Four, charging Wenger alone, is, so to speak, the other side of the same coin; it alleges he agreed to receive the kickback.)

The papers and arguments supporting the present motions place emphasis upon the rather vigorous activities of the Department of Justice in publicizing the indictment at or about the time of its filing. Thus, it is shown that when Corrado was arrested in Detroit, where he evidently lives, the day after the indictment, the office of the United States Attorney in that City issued a press release which said, inter alia:

"Federal Bureau of Investigation Agents today dealt a severe blow to the Cosa Nostra in three different states with the arrest of nine individuals and additionally the indictment of three other individuals who have been ordered to surrender, Attorney General John N. Mitchell announced. Additionally, one is being sought as a fugitive."

Later, describing the defendants, the release observed of one that he had "publicly been identified as a member of the Cosa Nostra." A second, Edward Lanzieri, was said to have the Runyonesque alias "Eddie Buff." Another, the release said, had "been publicly identified as the 'boss' of the southwest portion of the 'Organized Crime Syndicate in Pennsylvania'." "Dominic [sic] Peter Corrado," the present movant, was said to be "also known as 'Fat Dominic,'" and was further described as having "been publicly identified as one of Detroit's Cosa Nostra 'big men' and 'heirs apparent.'" A defendant who was "[s]till being sought" (since found) had been, the release said, "publicly identified as 'a top Cosa Nostra member'." Another had been similarly "identified as a Top Echelon member of the Cosa Nostra."

At about the same time as the foregoing press release in Detroit, the United States Attorney for this District and his Assistant in charge of the case

supplied the press with a release and answered questions for a press conference. These communications appear to have been in essential conformity with our local Criminal Rule 8 on the difficult subject of " 'Free Press—Fair Trial' Directives." Nevertheless, defendant relies, understandably and properly, on all the pronouncements from prosecution quarters, including what appears to have been said in Detroit and Washington as well as here.

Statements to the press by prosecuting and law enforcement officials like the ones quoted above suggest questions of a regrettably familiar character. It is not easy to square our professions about the presumption of innocence with the announcement by high federal officers that an *indictment* and an *arrest* serve to "[deal] a severe blow to the Cosa Nostra." The task of empaneling jurors whose assurances of uninfected neutrality are readily acceptable is not lightened by releases leading to prominent news stories that people merely indicted are "reputed Mafia figures," members of an " 'Organized Crime Syndicate in Pennsylvania' " (all seeming somehow reified by the quaint use of quotation marks and capital letters in the text of the release itself), and things of a similar nature. Our strictures against hearsay may come to seem Pickwickian to jurors who read in the daily press of defendants "publicly * * * identified," according to the Government, as gangster "bosses" or "Top Echelon" criminals or "heirs apparent" to criminal empires. The impact of such things may extend far beyond any single case to create a pervasive smog infiltrating, if not all trials, at least some uncertain number that could imaginably "feel" to the layman (or even to the "expert") like items from the world of "organized crime" or "racketeering."

The grave problems attending pretrial publicity in criminal cases have become familiar if not yet acceptably managed. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Whether they will have further import for this specific case, after the lapse of time has done its curative work, cf. United States v. Tropiano, 418 F.2d 1069 (2d Cir. 1969), cannot be known now. For the moment, the publicity plays a somewhat unorthodox, but not unsubstantial, role in the array of motions now before the court. For one thing, confronting the government's standard protest that a demand for particulars is an offensive quest for "mere evidence," the movant makes the neat point (conceded on argument) that he should have not less than what was volunteered to the press. Secondly, using press accounts of government releases, Corrado now urges a basis in these materials for his claim that there was deliberate, oppressive and fatally prejudicial delay in obtaining the indictment long after the facts were known to the government. The court has weighed these contentions in the pertinent aspects of the dispositions hereinafter stated.

### Motion to Dismiss

As the first of two asserted grounds for dismissal, Corrado invokes the five-year statute of limitations under 18 U.S.C. § 3282. He acknowledges, however, that this defense cannot succeed now, against the indictment on its face, since the crimes alleged are clearly within the period. It remains possible, of course, that the proof will fail to establish timeliness, cf. Grunewald v. United States, 353 U.S. 391, 404–405, 408–411, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), and the denial of the present motion is without prejudice to later relief on that basis.

As has been mentioned, Corrado also argues in the alternative that undue delay in procurement of the indictment, assuming compliance with the statute of limitations, requires dismissal. He cites in this connection a 1965 indictment in the Eastern District of Michigan of Samuel Marroso, a codefendant herein, for participation in what appear to have been the same general transactions as those now in issue. But there is no indi-

cation that at the time of the Michigan prosecution (in which Marroso was found guilty by a jury but ordered acquitted by the court because the evidence was insufficient to allow a finding that he was an "agent" of the Fund), the facts implicating the present movant (and other codefendants) were known sufficiently to warrant the present indictment.

As to asserted prejudice from the delay, Corrado points to a newspaper story conveying the prosecution's account of a Mafia "arbitration" meeting in 1964 at the Pittsburgh home of a Mr. Rosa, father of a codefendant herein. The elder Rosa, it now appears, is dead. So, says Corrado, "it is obvious that Mr. Rosa, had he been alive, would have been a material and vital witness, establishing the innocence of the defendant, Dominick Corrado." * But that is a large conclusion from the premise and will require much more than bare statement to become significant. As matters stand, the contention has no weight.

 The same is true of other conjurings with newspaper stories proposed as lending substance to the motion to dismiss. However dubious the actions that inspired such stories, they do not now support the claim of fatally excessive delay. To support such a claim, the movant would have to show "a deliberate, unnecessary pre-arrest delay [which became] * * * unreasonable and oppressive by reason of prejudice to the accused." United States v. Feinberg, 383 F.2d 60, 67 (2d Cir. 1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). See also United States v. Capoldo, 402 F.2d 821, 823 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969); United States v. Sanchez, 361 F.2d 824, 825 (2d Cir. 1966); United States v. Rivera, 346 F.2d 942 (2d Cir. 1965). There has been no such demonstration. The resulting conclusion—that the motion to dismiss must be denied—is without prejudice to renewal of the argu-ment if and when a trial record may be thought to render it more substantial.

### Motion for Bill of Particulars

 Having in mind the necessary concession, already noted, that a defendant is entitled to at least as many particulars as are given to the press—and, of course, that a defendant is owed more than that—the demand for a bill is resolved as stated below. The government will supply the following particulars relating to Count I (the numbers herein corresponding to those in the demand):

(1) What it is claimed defendant Corrado, either individually or as conspirator, directly or indirectly, gave, offered or promised to give or offer to the defendant Wenger to influence action on the latter's part.

(2) What action on the part of defendant Wenger was intended to be influenced or affected.

(3) If money was given or promised to Wenger, the amount claimed to have been given or promised.

(4) The name of the person or persons who, pursuant to the alleged conspiracy, are claimed to have given or offered to give anything of value to Wenger to influence the action referred to in (2), *supra*.

(5) The time and place, or times and places, if any, when such transfers of money or offers [i. e., those under (4), *supra*] are claimed to have occurred.

(6) Approximately when Corrado is claimed to have joined the conspiracy. United States v. Lopez, 26 F.R.D. 174, 175 (S.D.N.Y. 1960); cf. United States v. Bonanno, 177 F.Supp. 106, 119 n. 14 (S.D.N.Y.1959).

(7) The names of all claimed conspirators, whether or not named as defendants, and any overt acts by defendant Corrado, including time and place, that the govern-

---

* Memorandum of Law in Support of Motion to Dismiss, p. 9.

ment intends to prove upon the trial.

 With respect to Count II, the following particulars will be supplied:

(16) and (17) The mode, method and dates of defendant Corrado's travel, if any, as alleged in this Count.

(19) The title and nature of employment of defendant David Wenger with the Central States, Southeast and Southwest Areas Pension Fund.

(20) The acts, if any, performed by defendant Corrado in bribing or attempting to bribe defendant Wenger.

(21) The overt acts by any defendant, or any alleged conspirator not named as a defendant, which the government will prove at trial by which it is alleged defendants sought or intended to distribute the proceeds of and otherwise to promote, facilitate the promotion, management, establishment and carrying on of the bribery of defendant Wenger to which Count II relates.

 With respect to Count III, the following particulars will be supplied:

(22)–(26) The particulars consented to by the government.

(27) The place or places where defendant Corrado met with any co-defendants or any other alleged conspirators not named as defendants in furtherance of the conspiracy alleged in Count I or the unlawful activities alleged in Counts II and III.

Except as thus granted, the motion for a bill of particulars is denied.

*Motion for Discovery*

 In the peculiar circumstances of this case, while such items might not normally be available, the movant will be permitted by the United States Attorney to inspect and copy or photograph the diaries of codefendant Marroso.

Conceding that these were in evidence in the Michigan prosecution mentioned earlier, the government argues that the transcript of that trial "gives defendant Corrado the information he desires for preparation of his defense." This is an insufficient basis for denying access to the essentially public materials that Corrado's lawyer, unlike the prosecutor, considers useful "for preparation of his defense."

Some other items of which discovery is sought are consented to. Except for these and the diaries, the motion for discovery is denied.

So ordered.