852

**UNITED STATES of America,**

v.

**Tom KOLE et al., Defendants.**

**No. 77 Cr. 796–CLB.**

United States District Court,
S. D. New York.

Dec. 22, 1977.

Robert B. Fiske, Jr., U. S. Atty., New York City by Dominic F. Amorosa, Asst. U. S. Atty., New York City, for the Government.

James M. LaRossa, New York City, for defendant Kole; Robert S. Gold, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Simpson; Sidney H. Stein, New York City, of counsel.

Kaplan & Katzberg, New York City, for defendant Finkel; Robert F. Katzberg, New York City, of counsel.

Maloney, Viviani & Higgins, New York City, for defendant Stanchfield; Andrew J. Maloney, New York City, of counsel.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By Indictment filed November 9, 1977, the four defendants herein were charged with the crime of conspiracy. Additional related substantive counts are also pleaded, arising for the most part out of the alleged conspiracy. Defendants have pleaded not

guilty and the Indictment is set for trial on January 30, 1978.

Requests by defendants for certain particularizations and discovery have been ruled upon by the Court, but there remains open a single disputed item of particulars sought.

The Indictment charges that the defendants, three of whom are alleged to have been officers or directors of REA Express, Inc. ("REA"), a common carrier in commerce, conspired with each other and others to the grand jury known and unknown, to (Indictment ¶ 10) "embezzle, steal, abstract, wilfully convert to their own use and the use of others, wilfully misapply and wilfully permit to be misapplied, monies, funds, credits, securities, properties and assets of REA" arising in whole or in part from its business as a common carrier engaged in commerce, all in violation of Title 18 U.S.C. § 660.

█ In a separate part of the Indictment, under the heading "Objects of the Conspiracy," the following allegation is made:

"It was a part of said conspiracy that the defendants, TOM KOLE and RICHARD SIMPSON, would use their high positions of trust within REA to embezzle and convert to their own use in excess of $100,000 of the moneys of REA which were used in part to finance the defendant, TOM KOLE's personal horseracing business, to pay-off personal loans to the defendant, RICHARD SIMPSON, and to pay cash to politicians." (Emphasis added.)

It is with respect to the last item underlined above that defendants request particulars, which the Government has declined to furnish.

The purpose of a Bill of Particulars in a criminal case is, as stated in *United States v. Bonanno,* 177 F.Supp. 106, 119 (S.D.N.Y. 1959), an opinion by then District Judge Irving R. Kaufman:

"The defendant is generally held to be entitled to those particulars necessary to enable him to prepare his defense, avoid surprise and plead double jeopardy. (Citations omitted.) The fact that affording the defendant such protection may, in some cases, require some disclosure of the government's evidence is not a bar to the relief where the particulars demanded are, in fact, necessary to the preparation of the defense. (Citation omitted.) On the other hand, the government should not be forced unnecessarily to disclose its evidence and witnesses in advance of trial."

This Court has previously observed at the pre-trial hearing in this case, that a "politician" is usually the same person described as a "statesman" by those who agree with his policies. We are told in "Dictionary of Word and Phrase Origins," Vol. I, p. 277 (New York, 1962) that:

"an expert manipulator of political affairs, especially one who regards the great game of politics as his career, is known as a 'politician.' This word has always had somewhat unsavory connotations with, as one authority puts it 'implications of seeking personal or partisan gain.' For this reason, even the most skilled political operators often shun the label 'politician' much preferring to be called statesmen."

It is to be observed that the Indictment does not charge that the payments to the "politicians" were in themselves unlawful, except to the extent they represent an allegedly improper diversion of the assets and funds of REA. In the broad meaning of the word politician, there is comprised public officeholders on the federal, state and local level, and party officials, as well as those *eminences grises* who lurk in the background wherever statesmen and party officials are found, and use power by manipulation without responsibility.

Since both REA and the racing stable allegedly operated by defendant Kole did business in a great number of states, the totality of persons who could be included within the description of "politicians" as pleaded in this Indictment is almost without limit.

While success of the unlawful venture is not an essential element of the crime of conspiracy here charged, such success may constitute most powerful evidence of essential elements of the Government's proof,

namely, proof that the conspiracy in fact existed and that the misappropriations in fact were made. Accordingly, a defendant or his counsel, reading this Indictment should expect that at trial proof will be elicited that the conspirators, directly or indirectly, paid or attempted to pay cash to politicians.

It is noted that the conspiracy is said to have existed from in or about September, 1970 to in or about November, 1975 in the Southern District of New York and elsewhere. If a conspiracy of the sort alleged, said actually to have misappropriated more than $100,000.00 in the funds and assets of REA, was in existence during all that period, it may be assumed that if politicians were paid cash, the number of such politicians so paid was substantial.

"Whether a bill of particulars should be provided at all, and if ordered provided, its scope and the extent of its specificity, are matters within the discretion of the trial judge." *United States v. Cohen,* 518 F.2d 727, 734 (2d Cir. 1975), *cert. denied sub nom. Duboff v. United States,* 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975). *See also, United States v. Salazar,* 485 F.2d 1272, 1277–78 (2d Cir. 1973). Under the circumstances here presented and in keeping with the rule in *Bonanno, supra,* the Court believes that it is essential that defendants know what politicians, if any, the Government will claim at trial were paid cash, or what attempts were made to do so. At the very least, if such proof comes in as a surprise, it will be difficult to locate the alleged recipients in order that their side of the story may be told.

It is also understandable why the Government is somewhat resistant to divulging this information in advance of trial. The Court appreciates the fact that the indictments are often returned in part on pure hearsay, and the name and reputation of a statesman might be severely damaged by malicious gossip.

In an attempt to balance the interests, the Court directs that further and additional particulars shall be furnished by the Government on or before January 13, 1978. Such additional information shall be furnished by letter, which shall be sealed in an envelope and marked "confidential" and copies thereof forwarded to the attorneys for each defendant in this case, and a copy similarly sealed shall be delivered to Chambers. The original thereof will not be docketed or filed unless and until it becomes necessary.

In such additional particulars, the Government shall (1) state whether it will contend on the trial of this Indictment that cash was paid to politicians in furtherance of the conspiracy. If that item is answered in the affirmative, the Government shall specify (2) the names of any politicians it will contend were so paid; (3) the office or offices or affiliations possessed by each of such persons which led the Grand Jury to refer to him or her as a "politician;" (4) the approximate date of each such payment; (5) the place where such payment was made; and (6) the name of the person who the Government will contend made the payment.

If the Government will contend at trial that no such payments were made, but that one or more attempts were made to make such payments, such attempt shall be specified with the same particularity required in the prior paragraph with respect to actual payments.

■ A further and additional problem arises out of the fact that Glenn Stanchfield, the husband of defendant Rena Stanchfield, appeared on two occasions before the Grand Jury and testified, without immunity, in response to subpoena. He was represented by an attorney, available outside the Grand Jury room, and was warned of his Fifth Amendment rights. So far as the record appears, there is no showing that he was informed of his wife's privilege against disclosure of confidential interspousal communications. While this privilege is not codified in the Federal Rules of Evidence, this Court would undoubtedly apply the provisions of New York CPLR § 4502(b) and CPL § 60.10.

This does not suggest that evidence obtained in the Grand Jury by intruding into inter-spousal communications would lead to the suppression of other evidence as

"fruit of the poisoned tree," nor that it would be a basis for dismissing an indictment against the spouse whose rights were so violated. The Court has inspected the Grand Jury minutes, and finds that for the most part the information related by the husband as having been learned by him from his wife was either (1) double hearsay, and not necessarily incriminatory of the wife; or (2) communications which were not privileged because of the presence or participation of third persons, or because the communication had to do with checks, documents, bank records and other activities which are by their nature patent and not confidential.

The Court declines to direct that these Grand Jury minutes be made available to defendant wife at this time, and finds no basis for any further proceedings in connection therewith arising out of its *in camera* inspection.

So Ordered.