**UNITED STATES**

v.

**LIEBERMAN et al.**

United States District Court
S. D. New York.
Dec. 30, 1953.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of N. Y., Brooklyn, N. Y., George H. Bailey, Asst. U. S. Atty., New York City, of counsel, for United States.

Garey & Garey, New York City, Samuel Lieberman, Newark, N. J., Jacob J. Rosenblum, Edward T. Perry, New York City, of counsel, for defendant.

DIMOCK, District Judge.

Defendant Lieberman moves to inspect the Grand Jury minutes or, in lieu thereof, to dismiss the indictment and, in the alternative, for a bill of particulars.

The three defendants, Lieberman, Deppe and Dochain, have been indicted on two counts, the first of which charges that they smuggled and clandestinely introduced into the United States $233,000 worth of diamonds in violation of section 545 of title 18 of the United States Code and the second, that they conspired with other persons unknown to violate that section. The second count charges that it was part of the conspiracy that Dochain would obtain the diamonds outside the United States and would convey them to Deppe and that Deppe, an airline captain, would smuggle and clandestinely introduce them into the United States and that Deppe would, within the Southern District of New York, convey them to Lieberman. The overt acts charged are that Deppe had in his possession on or about September 27, 1953, in the Southern District of New York, diamonds of a value of $233,000, that Deppe on that day entered an apartment at 44 Bennett Avenue, New York and that, on the next day, September 28, 1953, Lieberman entered an apartment at 44 Bennett Avenue, New York.

In support of his application Lieberman swears that until his arrest he had never heard of either Deppe or Dochain. He submits newspaper clippings which indicate that the United States Attor-

ney's office informed the press that Deppe arrived at New York by air on September 27th with the diamonds in his possession, went immediately to the Henry Hudson Hotel in New York and, as soon as he had changed his clothes, went with the diamonds to the apartment at 44 Bennett Avenue where he was arrested on arrival. It is reported that Lieberman telephoned to the apartment asking whether "the stuff" was there and, on being informed that it was, called at the apartment on September 28th, at which time he was arrested. The newspaper accounts said that the authorities stated that Deppe and Lieberman did not know each other.

Lieberman bases his motion for an inspection of the Grand Jury minutes on his assertion that it would show that no probable cause was presented warranting the return of the indictment and that the indictment was not based on competent legal evidence.

■ Inspection of the Grand Jury minutes is rarely ordered. No case has been cited by Lieberman of such an order except where the charge was that there had been some irregularity, such as deprivation of constitutional rights. I know of no case where inspection has been allowed merely to find support for a charge that the evidence was insufficient to support the indictment. Such procedure would merely move back the trial arena from the open court room before a jury to the Grand Jury room.

Lieberman says that if he is deprived of his opportunity to demonstrate the insufficiency of the evidence from the Grand Jury record he can nevertheless demonstrate it from the known facts. He says that it seems to be conceded that he and the other two defendants are unknown to one another. The newspaper account said that the woman tenant of the apartment at 44 Bennett Avenue was not implicated. Dochain is still abroad. Lieberman has denied the charges under oath and has denied that he has ever made any admissions. It is urged that the circumstantial evidence is insufficient to substantiate an indictment.

■ Without passing on that question, I feel Lieberman has by no means closed the door as to the possibility of sufficient evidence having been presented to the Grand Jury to sustain the Grand Jury's action. His arguments rest upon newspaper stories and his own affidavit. The evidence before the Grand Jury may have been quite contradictory. I therefore deny the motion to dismiss the indictment.

There remains the motion for a bill of particulars. As to Count I, Lieberman's first demand is as follows:

"State the means and manner by which it is claimed that defendant Lieberman did knowingly and willfully smuggle and clandestinely introduce into the United States diamonds which should have been invoiced. If it is claimed that someone else actually smuggled the said diamonds into the United States, state in what way or by what means Lieberman is alleged to have participated therein."

■ Lieberman's problem arises from the rule that whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission or causes it to be done is a principal. 18 U.S.C. § 2. The statement in the indictment that Lieberman did knowingly and wilfully smuggle and clandestinely introduce into the United States the diamonds would permit proof that Lieberman aided, abetted, counseled, commanded, induced, procured or caused the diamonds to be so smuggled and introduced.

This matter has been argued on the supposition that no claim would be made that Lieberman personally introduced the diamonds so that that question as a practical matter is eliminated here although it might be of great importance in the ordinary case. Realistically, the question here is whether Lieberman has been given sufficient information when told, in

substance, that he is charged with aiding, abetting, counseling, commanding, inducing, procuring or causing the smuggling. I do not think that that is enough in this case.

■ It may be that the Government expects to rely simply on the circumstantial evidence that Lieberman telephoned the apartment and asked if "the stuff" was there and after being told that it was there appeared at the apartment. Perhaps the Government expects to rely on that as evidence that he must have been a purchaser of diamonds who induced their introduction into the country by offering to buy them if that could be successfully accomplished. If that is the charge that the Government will attempt to support, I think that Lieberman is entitled to know it. He claims to be innocent and is entitled to the presumption of innocence and, if the Government proposes to convict him as one who induced the smuggling by offering to purchase the smuggled property, he should not be forced to collect evidence to meet, for instance, the charge that he aided or abetted the introduction of the property. I direct therefore that the Government state whether defendant Lieberman introduced the diamonds into the United States personally or aided, abetted, counseled, commanded, induced, procured or caused such introduction and, if defendant Lieberman performed any of the latter acts, which one or ones he performed and the means by which it or they were performed.

I do not conceive what I am requiring to be a disclosure of the Government's evidence in the sense in which that expression is used when we are told that such is not the function of a bill of particulars. I do not require that the Government do more than in the example above given where I suggest that if that is the charge the statement be made that Lieberman induced the introduction by offering to purchase the diamonds if they were successfully brought in. I find a precedent for such a direction in United States v. Eastman, D.C.S.D.N.Y., 252 F. 232, where Judge Learned Hand was dealing with a prosecution for conspiracy to impede, hinder or retard the enlistment service. He wrote, 252 F. 232:

"The first count alleges a conspiracy in which the contemplated means is not specific, except as regards the publication of the magazine. The defendants will be entitled by bill of particulars, if they wish it, to a statement of the 'public speeches' and 'private solicitation' which are alleged, and to those parts of each number of the magazine relied upon as constituting a part of the conspiracy. They will be also entitled to particulars of the other means, if any, contemplated by the defendants to impede, hinder, or retard the enlistment service. The allegations as they stand would, however, support a prosecution."

The next item demanded by defendant Lieberman includes the manner and means by which the diamonds were smuggled, giving the date and the place of entry.

■ It seems to me that the manner and means of smuggling falls on the other side of the line and becomes indeed Government evidence rather than a particularization of the charge. The Government has agreed, however, to furnish the date and place of entry.

■ With respect to Count II, Lieberman begins by asking for the place or places where it is alleged that the conspiracy was formed. Particulars as to the formation of a conspiracy have almost uniformly been denied. See United States v. Van Wagenen-Sager, Inc., D.C.S.D.N.Y., 34 F.Supp. 735, and United States v. Lang, D.C.E.D.N.Y., 40 F. Supp. 414. This demand is denied.

Next the Government is requested by defendant Lieberman to state the identity of such others of the conspirators as may now be known other than the named conspirators. The Government has agreed to comply with this demand and

indeed has already furnished the name of one conspirator.

 Next it is requested that the Government state whether or not "it will be claimed that" Lieberman did any act concerning the acquisition of the diamonds by Dochain and the conveyance by Dochain to Deppe. It is noteworthy that there is no specific allegation that any such acts were ever performed in Count II. It is stated merely that there was a conspiracy to perform. Perhaps something of the kind might be inferred from the allegations under the head of overt acts to the effect that pursuant to the conspiracy Deppe had diamonds in his possession in the Southern District of New York on September 27, 1953, and entered an apartment house at 44 Bennett Avenue, New York, and that on the next day, pursuant to the conspiracy, Lieberman entered the apartment. Nevertheless, the gist of the second count is conspiracy and I do not think that the Government should be required to give particulars of any acts pursuant thereto except the overt acts.

Defendant Lieberman's next request is similar in that it asks for details as to acts presumed to have been performed pursuant to the conspiracy but as to which the indictment contains no allegations. Defendant in the same paragraph asks for the nature of the agreements between the parties. Those must be denied in accordance with the general policy with respect to particulars in conspiracy cases above referred to.

Then follow requests that the Government state whether "it will be claimed" that Lieberman had ever been to the apartment before or that occupants of the apartment knew or had known him prior to that time. Those requests go even beyond requiring evidence and ask for the Government's theory. They are not approved.

Finally, the Government is asked to state in what manner it is claimed that Lieberman's entry of the apartment was an overt act in the conspiracy. If such a specification is necessary, it is sufficiently accomplished by the allegations that pursuant to the conspiracy Deppe had the diamonds in his possession on September 27, 1953 and entered the apartment at 44 Bennett Avenue on that day and that in further pursuance of the conspiracy, Lieberman entered the apartment on the next day.

The motion for a bill of particulars is denied except as above indicated with respect to the first item under Count I and except as consented to by the Government.