**UNITED STATES of America**

v.

**Joseph Alfred TANNER, Lawrence Henry Rice, Jack Alter Pearl, Alvin Junior Cupp, and Walter Beryl Chipman, Defendants.**

**No. 67 CR 30.**

United States District Court
N. D. Illinois, E. D.

Dec. 1, 1967.

Edward V. Hanrahan, U. S. Atty., Lawrence E. Morrisey, Gerald Werksman, Asst. U. S. Attys., Chicago, Ill., for the Government.

Maurice Edelbaum, New York City, William S. Evans, Detroit, Mich., Matthew Salita, Chicago, Ill., for defendant Tanner.

William S. Evans, James F. Finn, Detroit, Mich., John J. Cogan, Chicago, Ill., for defendant Rice.

Robert Healey, Camden, N. J., Abraham Glasser, New York City, Matthew Salita, Chicago, Ill., for defendant Pearl.

William S. Evans, Detroit, Mich., Matthew Salita, Chicago, Ill., for defendant Cupp.

Newton B. Schwartz, Houston, Tex., John Powers Crowley, Chicago, Ill., for defendant Chipman.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Defendants' Pretrial Motions

This is a seven count indictment naming five defendants, including Joseph Alfred Tanner, Lawrence Henry Rice, Jack Alter Pearl, Alvin Junior Cupp, and Walter Beryl Chipman. It essentially arises out of the alleged arson and bombing of the vessel Howard L. Shaw, in the Calumet Harbor of Chicago, on or about September 6, 1963. The various defendants are charged with violating and conspiring to violate a number of federal statutes.[1]

---

**1.** Count I charges all five defendants with a conspiracy to commit actions in violation of 18 U.S.C. Sections 837, 1363, 1364, 1952, 2275, 81, and 1992, all of such actions being in violation of 18 U.S.C. 371, the federal "conspiracy" statute. Count II charges defendants Tanner, Cupp and Pearl with a substantive violation of 18 U.S.C. Sec. 81. Count III charges all five defendants with a substantive violation of 18 U.S.C. Sec. 837. Counts IV and V respectively, charge Tanner, Cupp and Pearl with substantive violations of 18 U.S.C. Secs. 1363 and 1364. Count VI names all of the defendants as violators of 18 U.S.C. Sec. 1952. Count VII charges Tanner, Cupp and Pearl with a violation of 18 U.S.C. Sec. 2275.

The alleged incident apparently arose from a longstanding labor dispute for control of maritime labor in the Great Lakes and St. Lawrence Seaway, involving the Seafarers' International Union of Canada, the Seafarers' International Union of North America, the Canadian Labor Congress, the Canadian Maritime Union, and the Upper Lakes Shipping Co., Ltd. It appears from the papers supplied to this Court, that defendant Cupp may be a Government witness in the case.[2] The other four defendants have jointly filed nine separate pretrial motions, and individually the defendants press five additional motions. All of the motions have been briefed by the parties and are now ready for decision. We will consider the motions at this time in seriatim fashion. For ease of understanding, all of the motions except those specially indicated have been filed jointly by defendants Tanner, Rice, Chipman and Pearl.

### 1. *Motion to Dismiss*

 Twelve separate grounds are asserted in support of this motion. The first five essentially charge that the indictment fails to adequately inform the defendants of the charges against them, fails to charge any acts constituting an offense against a federal statute, and is void because vague and indefinite. In our opinion, the arguments are without merit since each count of the indictment specifically sets forth the elements of the offenses in the generic terms of the relevant statutes, and in addition includes explicit facts relating each of the defendants to the offenses charged. Count I, in particular, lists 35 "Overt Acts" undertaken in furtherance of the alleged conspiracy. Although the remaining counts are not as particularized[3], they each constitute "a plain, concise and definite written statement of the essential facts constituting the offense charged," as is required by Rule 7(c) of the Federal Rules of Criminal Procedure. The test of sufficiency is met if the indictment contains the elements of the offenses charged, and apprises the defendant of what he must be prepared to defend against, so that in event of a subsequent

2. A motion to dismiss filed herein by defendant Pearl, alleges certain factual matters tending to discredit the circumstances from which Cupp's apparent decision to cooperate arose. The motion is supported by a voluminous brief and affidavit, and by other papers. In view of the serious allegation that the "total atmosphere" of the case is tainted by violations of the defendant's constitutional rights, the Government has filed a response requesting a hearing prior to trial to "clear the air." However, we believe the allegations made should properly be raised upon cross-examination, if Cupp testifies at trial. We will not entertain the parties' invitation to conduct a pretrial hearing of this matter. It is true that such a hearing could conceivably result in a dismissal of the indictment. However, if the motion were denied after a hearing, the likely possibility exists that defendants would conduct a rehearing at trial upon the cross-examination of Cupp, of the same allegations raised in this motion. If Cupp does not testify at trial, the above reasoning would not apply, and we would entertain a renewal of this motion during the trial, or as part of motion for a judgment of acquittal. But we do not think a hearing at this stage of the proceedings is required or that effective judicial administration would be furthered by holding such a hearing prior to trial. The motion is accordingly denied at this time. It may, of course, be renewed at an appropriate stage of the trial.

3. Count Five, set forth below, is perhaps the least particularized of all, yet is sufficient under the standards discussed, infra, in the body of the opinion. The Count charges:
"On or about September 6, 1963, at Chicago, in the Northern District of Illinois, Eastern Division (naming the defendants), defendants herein, with the intent to prevent, interfere with, and obstruct and attempt to prevent, interfere with, and obstruct the exportation to foreign countries of grain, foodstuffs, and other articles from the United States, did injure and destroy by fire and explosives, such grain, foodstuffs and other articles and the places where such grain, foodstuffs and other articles would be located while in such foreign commerce; in violation of Title 18, United States Code, Section 1364."

prosecution for the same offense, he may plead the instant indictment in bar. Russell v. United States, 369 U.S. 769, 82 S. Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Smith, 209 F.Supp. 907 (N.D. Ill.1962). Each of the counts of the instant indictment states the approximate date of the alleged offense, the acts which the defendants are charged with committing, and the approximate place thereof. Such an indictment is sufficient, and defendants' allegations are without merit.

■ For the same reasons mentioned above, the seventh ground relied upon by defendants is rejected. Defendants therein urge that the indictment merely alleges statutory violations in the generic language of the statutes, and fails to descend to particulars, citing for support United States v. Quinn, 365 F.2d 256, 262 (7th Cir. 1966). However, unlike in Quinn, the instant indictment does sufficiently state the elements of the offenses charged, and the manner in which they were committed. Of course, an indictment may be sufficient to withstand a motion to dismiss, and yet insufficiently inform the defendant of the specific facts of the alleged offenses. In such cases, the court may order the Government to supply a bill of particulars. United States v. Ketchum, 320 F.2d 3, 8 (2d Cir. 1963). The instant defendants have requested such particulars, and their motion will be considered *infra*.

■ In point six, defendant Chipman moves to dismiss based upon a prior prosecution which did not relate factually to the instant charges.[4] Nevertheless, he contends that the events alleged in this indictment, which undisputedly occurred prior to the trial in the other case,[5] should have been charged in the earlier indictment, and that the Government has demonstrated bad faith in delaying this indictment until 1967.

No authority is cited for this argument. The earlier case has no factual relationship to the instant one, and defendant Chipman concedes that double jeopardy is not an issue. Nor is any contention made that this indictment is barred by a statute of limitations. In short, the argument has no basis and is rejected.

■ In point eight, and in a separate "Motion to Dismiss Certain Paragraphs and Counts of the Indictment" filed by defendant Pearl, and adopted by his co-defendants, the contention is made that Paragraphs 2 and 6 of Count I, and Counts II and IV, should be dismissed. Defendants urge that in order to constitute violations of the statutes mentioned therein, 18 U.S.C. Sections 81 and 1363, the unlawful acts must have occurred within the special maritime and territorial jurisdiction of the United States, and that the Calumet Harbor is within the jurisdiction of Illinois, and not within the maritime jurisdiction of the United States. Defendants have submitted certain exhibits in support of their argument.

But these matters need not be decided prior to trial. The Government must have the opportunity to prove the allegations made in the indictment. If from the evidence it appears that defendants' contention is well taken, it may be renewed in a motion for judgment of acquittal at the close of the Government's case.

While on the subject, the remainder of the allegations in the "Motion to Dismiss Certain Paragraphs and Counts of the Indictment" relate only to defendants' version of the "facts." We cannot pass on those arguments before hearing the evidence. At this point there are no "undisputed facts," as defendant so cryptically characterizes them. The above captioned motion must be denied.

4. Both defendants Rice and Chipman were convicted of a conspiracy to intimidate and impede witnesses in a proceeding before the National Labor Relations Board, but the convictions were reversed on appeal in Rice v. United States, 356 F.2d 709 (8th Cir. 1966). At the instance of the Government, those charges were subsequently dismissed.

5. The offenses charged herein occurred in 1963, while the trial in the other case took place in 1964.

■ Point nine contends that the indictment is defective for failure to allege the required intent to violate the statutes. The argument is patently without merit, since each and every count of the indictment, does, in fact, allege the requisite intent, as defendants themselves can see.

■■ Point eleven challenges Count I as being duplicitous since it purportedly attempts to charge several separate and distinct conspiracies and substantive offenses. The short answer is that Count I charges a continuing conspiracy beginning on or about April 1, 1963, and "continuing thereafter until the date of the indictment." Each of the activities mentioned was alleged to be "a part of the conspiracy." A continuing conspiracy constitutes only a single offense and only one offense can be proved by Count I. The defendants' argument is rejected.

■ Point 12 charges that Court I is void because it fails to allege "where" in interstate commerce the activities alleged in paragraphs one and four took place. It is true that the indicated paragraphs of Count I generally allege that defendants transported and traveled in interstate commerce with certain proscribed purposes, without specifically asserting where in commerce such activities occurred. But those omissions do not render the indictment defective. If anything, they are items to be obtained via a bill of particulars, and then only if the court, in its discretion, thinks they are necessary objects of such a motion. Defendants' objections to Count I are overruled.

Finally, the Government concedes the merit of defendants' attack on Count Six, which is found in point ten of the motion to dismiss, and that Count is accordingly dismissed.

Except as to Count Six, all of defendants' reasons in support of the motion to dismiss are found to be unsupported in law, and the motion is accordingly denied.

2. *Motions to Sever of Defendants Tanner, Rice and Chipman*

The above named defendants have moved to sever each of their cases for trial. Several grounds are asserted. First, on information and belief, they each allege that one or more co-defendants has given a written or oral confession or statement which implicates each of the movants. It is contended that if said statement is offered in evidence, although not admissible against any defendant but the one making it, it would be prejudicial to the other defendants. Furthermore, the moving defendants might be unable to cross examine the declarant because of the latter's Fifth Amendment privilege against self-incrimination.

Although technically, confessions or statements are only offered in evidence against the declarant, and the judge is obliged to so instruct the jury, several cases have considered it reversible error to deny a severance where the effect of admitting the statement at a joint trial is to indelibly prejudice the other defendants. As was stated by our Circuit Court in United States v. Haupt, 136 F.2d 661, 672 (7th Cir. 1943), and still the law today:

"True, as the government asserts, such statements were offered in evidence only against the defendant by whom made, and the court instructed the jury accordingly. A reading of these statements, however, leaves no room for doubt but that they were damaging not only as to the defendants against whom offered but as to all others. We doubt if it was within the realm of possibility for this jury to limit its consideration of the damaging effect of such statements merely to the defendant against whom they were admitted. We have equal doubt that any jury, or for that matter any court, could perform such a herculean feat."

Other cases adhering to the *Haupt* rationale have been Schaffer v. United States, 221 F.2d 17, 19, 54 A.L.R.2d 820 (5th Cir. 1955), Barton v. United States, 263 F.2d 894, 898 (5th Cir. 1959), and Rogers v. United States, 304 F.2d 520, 523 (5th Cir. 1962). See United States v. Boyce, 340 F.2d 418 (4th Cir. 1964).

■ But the *Haupt* severance rule should not be applied automatically. The circumstances of each case must be examined to set if the co-defendants are or would be prejudiced by the proffered statement. For example, in United States v. Miller, 340 F.2d 421, 423 (4th Cir. 1965), the court held that *under the circumstances of the case*, a severance was not warranted. Cf. Carter v. United States, 304 F.2d 881 (5th Cir. 1962).

■ However, in the instant case, the defendants merely allege on information and belief that one of their co-defendants has made a confession. The alleged confessor is not named. From the material supplied in connection with defendant Pearl's separate motion to dismiss, discussed in note two supra, it is reasonable to assume that the defendants suspect defendant Cupp of having made incriminating statements to the Government. The Government has not acknowledged or denied that it either has such a statement or intends to introduce it at trial. At this stage, we would be unwarranted in granting a severance on the basis of defendants' unsubstantiated allegations. However, should the Government intend to introduce such a statement at trial, we would order its counsel to submit said statement prior to trial for an *in camera* inspection by the Court. Indeed, defendant Chipman has requested the court to order such an *in camera* disclosure, and we will accede to his request. Thus if the Government does intend to use any such statement at trial, we order it to submit said statement for an in camera inspection prior to trial. Our actions in this regard are taken pursuant to the recent amendment to Rule 14 of the Criminal Rules which provides:

> "In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial."

The Advisory Committee's Note accompanying the amendment cites the *Schaffer* and *Barton* cases as reasons for the rule, and states:

> "The purpose of the amendment is to provide a procedure whereby the issue of possible prejudice can be resolved on the motion for severance. The judge may direct the disclosure of the confessions or statements of the defendants to him for in camera inspection as an aid to determining whether the possible prejudice justifies ordering separate trials. * * * "

The defendants' objection that they might be unable to cross-examine the potential statement of any defendant will be considered should the Government submit a statement for an *in camera* inspection pursuant to our order.

■ An additional reason in support of defendants' motion is that if a co-defendant should elect to become a witness in his own behalf, the other defendants would be forced to testify or they would suffer an adverse inference and comparison by the jury, in violation of their rights under the Fifth Amendment. However, we are aware of no case law which justifies a severance upon such grounds. DeLuna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (5th Cir. 1962), does not support defendants' position. *DeLuna* was a joint trial involving defendants with mutually exclusive defenses. One defendant testified in his own behalf, and the other did not. The court held it to be prejudicial error for one defendant's counsel to comment upon the other defendant's failure to testify, in view of the circumstances of the case. The issue considered by *DeLuna* does not address itself to the defendants' argument. It merely raises, a problem which could conceivably arise at sometime in the future. We cannot say, at this stage of the proceedings, without a showing of real prejudice, that defendants would suffer any adverse inferences by way of comparison with a defendant who waives his privilege. To hold otherwise, might in practice make obsolete the concept of a joint trial, since in every joint trial

there is the possibility that some defendants would testify, but not others.

 A final argument in support of the motion to sever is the suggestion by defendants Rice and Chipman that at least one of the defendants has made exonerative statements, and would be a necessary witness in their behalf at trial. But they argue, citing United States v. Echeles, 352 F.2d 892 (7th Cir. 1965), such defendant may assert his Fifth Amendment privilege, thereby effectively denying to his co-defendants the benefit of his favorable testimony.

Rice and Chipman offer nothing to support their arguments. In Echeles, it appeared on the official record from a prior trial that a co-defendant had made certain statements tending to exonerate Echeles. The Echeles doctrine should not be invoked automatically. Something substantial must be offered to support a motion premised on Echeles.[6] We cannot grant a severance on the bald assertion by defendants that someone has made or might make exonerative statements in their behalf.

For all of the above reasons, we deny the motion to sever at this time.

### 3. Motion of Defendant Chipman to Transfer

 Defendant Chipman has moved, pursuant to Rule 21 of the Criminal Rules, to transfer the trial of this case to the Southern District of Texas, where he resides. Although he generally alludes to certain unfair and prejudicial news publicity which he contends would prevent him from obtaining a fair trial in this District, he makes no showing that there was in fact any publicity, or that if there was, it was prejudicial in any way. Certainly the convenience of the parties and witnesses would not be served by transferring this case to Texas, even though it might suit Chipman's personal convenience. Although Chipman states that he "reserves the right to put on oral testimony" showing the extent of the prejudicial publicity herein, we think he should already have supported his motion by way of particularized affidavit. The motion to transfer being unsupported by any factual averments, it accordingly is denied.

Nevertheless, we will allow Chipman to furnish an affidavit if he desires, and if it includes a sufficient showing of prejudice, we would be willing to consider a motion for vacation of our present ruling.

### 4. Motion for Discovery and Inspection

 The defendants seek to discover and inspect ten categories of items. The Government has indicated that it does not possess any written or transcribed oral statements given or made by the moving defendants to agents of the Government. But pursuant to Rule 16(b) of the Criminal Rules,[7] we direct the Government to permit copying and inspection of all documents turned over by the moving defendants to agents of the Government during the course of the

---

6. Some of the papers introduced in support of defendant Pearl's separate motion to dismiss, discussed supra in note two, indicate that defendant Cupp might have made such a statement. But Rice and Chipman make no mention of it and presumably do not rely upon it. In any event there is nothing, at this point, to justify an assumption that the purported statement referred to by Pearl was an accurate reflection of the true facts.

7. Which provides: "Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a)(2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500."

investigation leading to this indictment. Even though defendants make no showing of "materiality" or "reasonableness," these items, if any exist, very likely would be material to the instant charges, and fundamental fairness requires that the defendants have access to them. As recognized by the Advisory Committee's Note to the amended Rule 16, the defendants are not obliged to specify with particularity the documents sought, if they are unaware of what particular items the Government may possess.

Even before Rule 16 was amended to allow more liberal discovery, several courts have allowed defendants to discover tangible property belonging to them which was in the possession of the Government, where the material was otherwise unavailable to the defendant. See e. g. United States v. Rainey, 10 F.R. D. 431 (W.D.Mo.1950); Colella v. United States, 360 F.2d 792 (1st Cir. 1966); United States v. Miller, 249 F.Supp. 59 (S.D.N.Y.1965). The amended Rule 16 (b) does not contain the former limitation that the material sought must be obtained from or belong to the defendant. Thus it appears that in the absence of extenuating circumstances, which are not here apparent, the Government should turn over any of the documents in this category which it might possess.

That leads to items 3 through 6 which seek the following:

"3. Originals or copies of documents obtained from third parties, which are in the possession, custody or control of the Government, and which the prosecution expects to utilize in proving the charges in this indictment.

"4. Memoranda and/or other documents issued by Upper Lakes Shipping or any of its representatives to any agent of any United States Government agency including the Justice Department.

"5. Memoranda and/or other documents issued by any agent of any United States Government agency including the Department of Justice to Upper Lakes Shipping or any of its representatives.

"6. Transcripts of depositions taken in the Admiralty suit commenced in the Southern District of New York by Upper Lakes Shipping, Upper Lakes Shipping Ltd. v. International Longshoreman's Association et al. [D.C., 33 F.R.D. 348]."

It is true that documents which the prosecution expects to utilize in proving the charges in this indictment as requested in item 3, are relevant to the issues and material to the Government's prosecution of them. And it is also true that the terms "material" and "reasonable" have been variously interpreted by the courts, usually based upon the particular facts in issue. The amended Rule 16(b) is expected to liberalize the discovery process in criminal cases and eliminate the element of surprise from criminal trials. Defendants cite a recent article in the Georgetown Law Journal in support of their discovery attempts, and to illustrate an attitude toward criminal discovery which they urge this court to adopt. The article, by Daniel A. Rezneck, The New Federal Rules of Criminal Procedure, in 54 Geo.L.J. 1276, 1278–80 (1966), states:

" * * * As to these materials (those authorized for discovery under Rule 16(b), see note 7, supra) there is no right to automatic discovery; the court will have to make a determination on each motion as to whether the defendant has met certain burdens. Although the specific designation of items is not explicitly required, the defendant must show that the information is material to the preparation of his defense and that the request is reasonable. In practice, however, it will be difficult to justify the imposition of strict standards of 'materiality' and 'reasonableness'. In view of the absence of any provision in the rules whereby a defendant may direct interrogatories to the government or may take depositions for discovery purposes, it may be impossible to lay a detailed foundation to support a 16(b)

discovery motion. Also, it may be difficult to demonstrate the materiality of what has not yet been seen.

"Anything the government plans to introduce against the defendant at trial would obviously be material to the preparation of his defense and a request to inspect it would be reasonable * * *. But the rule does not limit the defendant to discovering the case against him. It evidently contemplates that his discovery may encompass a search for evidence which he may use to support his own case or to impeach the government's * * *

"The standard of materiality for discovery under the new rule should not be significantly more stringent than the scope of discovery allowed for depositions and interrogatories under the civil rules. There, discovery is permitted if the matters sought are 'relevant to the subject matter' of the proceeding; they need not be admissible in evidence so long as they may lead to the discovery of admissible evidence, receivable either directly or by way of impeachment.

"Reasonableness is a closely related requirement. A request for items material to the preparation of the defense would ordinarily be reasonable, unless, for example, the defendant already had some other access to the matters sought."

 The recent trends in the area of criminal discovery suggest that under the present rules, the courts indeed would be justified, as to many matters at least, in allowing discovery as far reaching as is presently permissible under the civil rules, as Mr. Rezneck suggests. As to many objects of discovery, this court has long felt that to be a worthwhile philosophy. The reasons for restricting criminal discovery have to a large degree, lost their once appealing influence, in this court's judgment. See 2 Orfield, Criminal Procedure Under the Criminal Rules, Sec. 16.8, p. 514 (1966) (hereinafter known as Orfield.)

 However, each case must be judged on its own facts. The requirements of "materiality" and "reasonableness" cannot be presumed to have been inserted indiscriminately. Indeed, the Advisory Committee's Note provides: (in pertinent part)

"(1) While specific designation is not required of the defendant, the burden is placed on him to make a showing of materiality to the preparation of his defense and that his request is reasonable. The requirement of reasonableness will permit the court to define and limit the scope of the government's obligation to search its files while meeting the legitimate needs of the defendant. * * * *"

 We believe, in a case of this type, involving five defendants, and posing the possibility of protracted litigation, the defendants should be provided access in advance of trial to the documents which the Government intends to use in proving its case. Such documents, as already indicated, are certainly material to the issues. Requiring the defense counsel to adequately mount either a legal challenge to documents first seen at trial, or to effectively cross examine upon a cursory and abrupt inspection of them is neither fair nor necessary.

This course of procedure may have the added advantage of streamlining the litigation by producing timesaving stipulations of fact between the parties, and although perhaps not pertinent here, in an appropriate case, making unnecessary the need for a trial at all by pointing out to the defendant the enormity of the Government's case against him.

The request for such documents is not, as the Government suggests, a bid for an unguided tour through its files. Indeed, it is expressly limited to those documents "which the prosecution expects to utilize in proving the charges in this indictment." We might tend to agree with the Government were the request not so limited. In that event, we think the request would neither be for material information, nor more importantly, reason-

able in nature. The instant request, however, meets both requirements, in our opinion.

A further problem exists. In fairness to the Government, it should not be required as this time to elect which documentary evidence it intends to rely upon at trial, even though the indictment has been pending for nearly a year. In a case of this nature, which might not come to trial for a few months, the Government should be allowed to sift the evidence in its possession and make a determination of what it intends to use.

We believe the solution is for the Government to turn over to the defendants copies of all documents which it intends to use at trial not less than thirty days prior to the date set for trial herein. That should be sufficient time for defense counsel to effectively utilize such information in preparing their defenses, and at the same time, afford the Government adequate opportunity to elect the documentary evidence upon which it intends to rely.

■ However, the Government will not be ordered to produce memoranda passing between itself and the Upper Lakes Shipping, Ltd., (items 4 & 5), or transcripts of depositions taken in the civil admiralty suit in the Southern District of New York, captioned Upper Lakes Shipping Ltd. v. Int'l Longshoremen's Association (item 6), unless it intends to introduce any of such documents or parts thereof into evidence at trial.

Defendants' justification for these requests is that Upper Lakes exerts great influence upon the Canadian Government, which has in turn exercised its influence with the United States Government to secure the return of this indictment. Thus defendants contend, it is material to the preparation of their defense to have access to documents passing between the United States Government and Upper Lakes Shipping.

We do not think such memoranda, if any exist, are material to proving the defendants' innocence of the charges contained in the indictment. If defendants contend that the charges contained therein are not based on fact, this information will not help them disprove the charges. If indeed a "frame-up" or collusion is charged, something more positive must be here set forth to support defendants' request, and their bare unsupported allegation that the Upper Lakes Shipping, Ltd. had indirect influence upon the return of this indictment does not charge an impropriety. Many private parties are responsible for the return of criminal indictments either by their testimony to the grand jury, or by the supply of incriminating information to the authorities. Items 4, 5 and 6 need not be supplied by the Government.

Item 7, relating to electronic reproductions, will be considered in conjunction with defendants' motion to suppress evidence obtained by electronic eavesdropping, infra.

■ Item 8 seeks the official F.B.I. fingerprint reports of all defendants and co-conspirators whether or not named in the indictment, "showing all state and Federal convictions of all such persons including Alvin Junior Cupp, whom these defendants believe to have a Tennessee conviction prior to the recent Federal conviction for which he was released."

We see no relevance to the request for fingerprint reports. Insofar as they might contain conviction records of Cupp or other co-conspirators, we note that such records were denied to a defendant in Feyrer v. United States, 314 F.2d 110, 113 (9th Cir. 1963). However, pursuant to our discretion under Rule 16(b), we think prior convictions of all defendants and co-conspirators, whether or not named in the indictment,[8] are material to the issues herein. For purposes of cross examining any of such persons it may well become relevant to inquire into his possible criminal background. Were the defendants to be denied that information, and a witness to lie under oath

8. Cf. United States v. Baker, 262 F.Supp. 657, 675 (D.D.C.1966).

regarding his prior convictions, the Government would certainly be obligated to come forward with any contradictory evidence it possessed, under the rationale of such cases as Brady v. Maryland, 373 U. S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), and Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967).

Although we could condition our order to provide that the Government should turn over this information only as to those defendants and co-conspirators who testify, and to do so only at trial, we cannot see any harm in directing the Government to supply this information at this time, inasmuch as the requested records pertain only to defendants and co-conspirators herein.

Of course, the Government need not supply each defendant with his own prior record. In addition, as required by the limitation to Rule 16(b),[9] the Government need not produce its own confidential reports, but may supply what information it possesses concerning co-defendants' and co-conspirators' criminal records, in complete but summary fashion.

In item 9, the defendants request "the Grand Jury minutes of the testimony of Alvin Junior Cupp and all other persons named as defendants or co-conspirators including those who have either been offered or accepted an offer of immunity, or offer not to be prosecuted if a government witness."

■ Under Rules 16(a) (3), the moving defendants are entitled to inspect or copy their own recorded testimony before the Grand Jury, if any. United States v. Johnson, 215 F.Supp. 300 (D. Md.1963), which denied such disclosure in the absence of a showing of special circumstances, was decided prior to the

1966 amendments to Rule 16, which resulted in the addition of Rule 16(a) (3), and need not be given controlling weight. As the Committee recognized: "the policy which favors pretrial disclosure to a defendant of his statements to government agents also supports pretrial disclosure of his testimony before a grand jury." The Government is directed to allow inspection or furnish copies to each moving defendant of his own testimony before the Grand Jury.

■ However, no such disclosure is required, at this time, as to the testimony of persons other than the moving defendants. Although pursuant to Rule 6 (e), the proceedings of the Grand Jury are supposed to be shrouded in secrecy, except insofar as the Government attorneys are concerned, the trial court has the inherent power and unmitigated duty to lift the lid of secrecy in order to insure that justice will be done. But before this unveiling can occur, the defendants must make a showing that there is a "particularized need" for such inspection, which outweighs the policy of secrecy. Pittsburgh Plate Glass v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) ; Dennis v. United States, 384 U.S. 855, 868, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

■■ In this case, no such showing has been made up to this point. But as the Supreme Court has indicated in United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), and Dennis, supra, "the need for a full and fair cross-examination may provide the necessary 'particularized need' ". United States v. Baker, 262 F. Supp. 657, 671 (D.D.C.1966). See 1 Orfield, supra, Sec. 6:128, p. 502 et. seq. Should the defendants make a showing of "particularized need" at some future time, the court will turn over the appro-

9. That limitation provides:
"Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500."

priate Grand Jury testimony after the necessary witness has testified on direct examination at trial, and will provide an adequate opportunity to defense counsel to study such testimony in preparation for cross-examination. United States v. Baker, supra at 671. Should the court feel that the disadvantages of waiting to turn over the material until after the witness testifies, namely the need to interrupt a protracted trial to afford counsel time to study the proffered testimony, outweigh the advantages of such procedure, we may decide to tender the testimony prior to the time the witness takes the stand.

Although we think the Court should have the opportunity to examine the testimony *in-camera* and determine if any of it should be turned over to the defendants, the Supreme Court disapproved that practice in Dennis v. United States, 384 U.S. 855, 874–875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966). The Court said that "the determination of what may be useful to the defense can properly and effectively be made only by an advocate (defense counsel)", and that the trial judge's function is limited to determining whether a showing of "particularized need" has been made.

However, where the "particularized need" is asserted to be for cross-examination purposes, it may be that the court would have to make an *in camera* inspection in order to intelligently rule upon the motion. The court will cross those hurdles if they should arise.

■ Item ten, which seeks the names of a certain category of witnesses, is clearly improper, this being a non-capital case, and it will be denied to defendants. See 18 U.S.C. Sec. 3432; United States v. Margeson, 261 F.Supp. 628 (E.D.Pa. 1966); United States v. Manhattan Brush Co., 38 F.R.D. 4 (S.D.N.Y.1965).

5. *Motion for Production of Documentary Evidence*

This motion seeks to discover by an alternative method, albeit an improper

one,[10] the identical items, with some omissions, which we have above ruled upon in connection with the motion for discovery. Consequently we need not consider it further. Item four, which seeks the same electronic recordings sought in item seven of the above motion, will also be considered in connection with defendants' motion to suppress evidence obtained by electronic eavesdropping, infra.

6. *Defendants' Motion for a Bill of Particulars*

Pursuant to Rule 7(f), the defendants present a motion seeking answers to 82 separate particulars, most of which contain multiple categories. The Government resists the motion in its entirety, contending that the defendants seek to obtain evidentiary detail rather than to learn the nature of the accusations so as to defend against them and to be able to plead them in bar to a subsequent prosecution.

■ It is elementary that the purpose of a bill of particulars is "to enable the accused to prepare for trial and to protect him from a second prosecution for an inadequately described offense." 1 Orfield, supra, Sec. 7:129, p. 713. It is not its function to require the Government to disclose its evidence in advance of trial. Of course, the paradox of the function of a bill of particulars is readily apparent. On the one hand, it is not designed to elicit evidence, while on the other any information which elaborates upon the nature of the offenses charged is likely to itself constitute "evidence." See United States v. Metropolitan Leather & Findings Assoc., 82 F.Supp. 449, 454 (S.D.N.Y.1949), cited in 1 Orfield, supra, Sec. 7:132, p. 719. It is clear that the defendants may not force the Government to reveal its entire case, or all of the evidence it hopes to adduce at trial. Peppard v. United States, 314 F.2d 623 (8th Cir. 1963). That principle, of course, conflicts to some degree with the liberal discovery afforded to defendants

10. See Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951).

by Rule 16. Perhaps the best description that has been formulated was expressed in Yeargain v. United States, 314 F.2d 881, 882 (9th Cir. 1963):

"A defendant is not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case." (original emphasis)

See United States v. Baker, 262 F.Supp. 657, 674 (D.D.C.1966).

 The decision as to whether particulars should be furnished must be made within the context of the facts and the type of indictment used in each case. As the United States Attorney's Office for this District is fond of repeating, "the application for the bill of particulars (is) one addressed to the sound discretion of the court * * *." Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927). In view of the Advisory Committee's Note to the amended Rule 7(f),[11] the courts should exercise their discretion by taking a liberal attitude towards the grant of bills of particulars. Walsh v. United States, 371 F.2d 436 (1st Cir. 1967).

We will first consider the requests directed to Count I. In substance, it is a conspiracy charge, which in 8 paragraphs charges the violation of eight distinct statutes,[12] and in an additional section alleges 35 "Overt Acts" charged to be in furtherance of the conspiracy. The eight paragraphs of legal allegations are framed in relatively "skeletal" terms, containing sufficient factual material to save the Count from a motion to dismiss, but essentially rather general in nature.

The overt acts are, however, quite specific in content both as to the acts charged, and the approximate date of their occurrence. For that reason, in ruling on the motion, we will consider together the two sections of the Count, along with the rest of the indictment as well, to see if sufficient factual detail has been provided to apprise the defendants of the charges.

 Item one asks when and where the conspiracy was formed, and when, where and in what manner each defendant became a member thereof. The indictment charges that the conspiracy began on or about April 1, 1963, and was carried out at Chicago and at "divers other places within and without this District". Although Overt Act 2 relates a meeting in April or May of 1963, between Chipman, Cupp, Rice, Pearl, and one Swait, an unindicted co-conspirator, defendants should not have to guess whether this meeting constituted the formation of the conspiracy. Indeed Tanner and the other five unindicted but named co-conspirators did not even attend this meeting. The Government has stated the conspiracy began on or about April 1, 1963, and that is sufficient as to that point. But if it knows, it should further state approximately when, where, and in what manner each defendant became a member thereof. Authority is found in United States v. Lieberman, 15 F.R.D. 278, 281 (S.D.N.Y.1953), for providing the manner in which the Government alleges [13] each defendant became a member of the conspiracy. That is an important aspect of the charge and should be re-

---

11. The 1966 amendment to Rule 7(f) eliminated the requirement that "cause" be shown precedent to the grant of a motion under the rule. The reason as stated by the Committee was:

"The amendment to the first sentence eliminating the requirement of a showing of cause is designed to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases."

12. See note 1 supra.

13. In considering this motion, it would be improper to deny a particular because of a belief that the defendants know what they did. That view would presume that the defendants are guilty, rather than invoking the proper presumption of innocence. See United States v. J. M. Huber Corp., 179 F.Supp. 570, 573 (S.D.N.Y. 1959). Indeed, in answering a bill of particulars, the government in theory is only relating what it alleges to be the fact, rather than actually providing fact.

vealed. In connection with this item or any other particular which the Government is hereinafter directed to supply, it is not the Court's intention to strictly limit the Government's proof at trial. Therefore, if the Government cannot respond in precise terms where certain information is concerned because of uncertainty as to the facts, it should respond in approximate terms.

■ Item two seeks the names of the co-conspirators whose names were unknown to the grand jury at the time of the indictment, but which have since become known to the Government. This is clearly proper under the authority of United States v. Covelli, 210 F.Supp. 589, 590 (N.D.Ill.1962), and they should be furnished. United States v. Baker, 262 F.Supp. 657, 675 (D.D.C.1966). This ruling also disposes of item 78.

■ The first allegation in the overt act section of Count I incorporates by reference each allegation contained in Counts II through VII as "overt acts" upon the part of said defendants. Thus item 3 seeking the states involved in the interstate transportation of explosives, as charged in paragraph 1 of Count I, has presumably been partially answered in Count III. Both paragraph 1 of Count I, and Count III allege the commission of the same offense, namely a violation of 18 U.S.C. Sec. 837, and Count III states that all five defendants transported explosives from LaFollette, Tennessee, to "divers other places" and to Chicago. The defendants should be told, if now known to the Government, to what "divers other places" the indictment refers. An answer to that will suffice also to answer item 61.

■ However, item 4, asking "what buildings and other real and personal property were destroyed as alleged in paragraph 1 of Count I" should be answered. Count III uses the identical general language as paragraph 1 without descending to specifics when dealing with the purported targets of the explosives. To plead this charge in bar against a subsequent prosecution, de-

fendants should be furnished the particulars. An answer to item 4 would also cover item 63.

■ The same reasoning applied to item 3 will apply to item 5. Both paragraph 2 of Count I and Count IV charge a violation of 18 U.S.C. Sec. 1363, using the identical language, except that Count IV particularized the overt acts and names the objects thereof, namely "the dock at the Calumet Harbor and the vessel, Howard L. Shaw, and the structural aids and appliances for navigation and shipping." This is the information sought by item 5. Since the overt acts charged in Count IV are incorporated by reference into Count I, no response is required to item 5.

Item 6 has also been answered in Count IV, since it is therein explicitly stated where within the special maritime and territorial jurisdiction of the United States the acts alleged in paragraph 2 occurred.

■ Item 7 seeks first to learn "what articles were attempted to be prevented, interfered with and obstructed in exportation from the United States," as mentioned in paragraph 3. This is provided by Count 5 which charges the identical substantive offense about which paragraph 3 charges a conspiracy and which is incorporated by reference into Count I. Thus the first part of item 7 is denied. However item 7 also asks what acts each of the moving defendants committed resulting in the charge contained in paragraph 3. The offense charged in paragraph 3 and Count V is alleged to have occurred on or about September 6, 1963 at Chicago. From the facts alleged in Counts II, IV, and VII, it is apparent that the offense charged refers to the destruction of the vessel Howard L. Shaw in Chicago on or about September 6, 1963. But that does not tell each of the defendants what actions *he* is charged with contributing. Under the rationale of United States v. Lieberman, 15 F.R.D. 278, 281 (S.D.N.Y. 1953), and United States v. Baker, 262 F.Supp. 657, 674 (D.D.C.1966), the government should respond to the second

part of item 7, if that specific information is available to it.

■ Item 8 asks "what places are referred to in paragraph 3 of Count I where said articles would be located in foreign commerce." That the articles are or would be in "foreign commerce" is an element of the offense charged, as stated in 18 U.S.C. Sec. 1364. If the Government knows this specific information defendants should be provided with it so as to be better apprised of the specifics of the offense and to be able to mount an attack against one of its necessary elements. For these reasons, the second half of item 67, which seeks the same answers, will be accounted for by this response.

The Government has acceded to the dismissal of Count VI, which charges a violation of 18 U.S.C. Sec. 1952. Paragraph 4 of Count I charges a conspiracy to violate the same section and presumably will not be pressed at trial since the alleged violation of section 1952 was conceded to be inapplicable to the time period charged in the indictment. Thus items 9, 10, and 11 are moot, as are items 68, 69, 70, 71 and 72.

■■ Item 12, seeking the vessel of foreign registry alluded to, is obviously answered by Count VII, which names the Howard L. Shaw. Paragraph 5 charges a conspiracy to violate section 2275 of Title 18, while Count VII sets forth the substantive offense. The names of the persons aboard the vessel are immaterial to the clear statement of the offense and need not be supplied. Nor is the nature of the cargo material, although as set forth in Count 5, it quite obviously was grain, foodstuffs and other articles. Thus item 13 is denied.

Items 14 and 16 are answered in Count II, which is also incorporated into Count I by reference. Item 15 constitutes evidence and is denied. Items 17, 18, and 19 seek facts readily ascertained from Overt Acts 16, 17, 18, 19 and 20 of Count I.

■ Item 20 seeks to discover how each defendant and co-conspirator misrepresented, concealed or hid the "furtherance, purpose and acts" done in pursuing the conspiracy, as charged in paragraph 8. The request seeks to discover evidence of a kind not generally allowed in a bill of particulars. The Government need not reveal, in answer to such a request, the manner in which it intends to prove its case. Item 20 is accordingly denied to the defendants.

■ Item 21 seeks the place of employment and last known addresses of the named but unindicted co-conspirators. Although this is more properly a motion for discovery, rather than for particulars, we direct the Government to respond to it.

■ Items 22 and 23, seek the *exact* date, place and time of the meeting referred to in Overt Act No. 2. The Government provides the location by city (Detroit, Michigan), but should provide the approximate address of the place of meeting, if known. But the exact time thereof need not be provided. If the Government is able to relate a more approximate date than April or May, 1963, it is directed to do so. But, of course, it need not furnish the exact date, since to do so would limit the Government to strict proof thereof at trial. Land v. United States, 177 F.2d 346, 349 (4th Cir. 1949).

■■ Item 24 is multi-faceted. In Overt Act No. 3, defendants Rice and Pearl are alleged to have fired gun shots at the vessel "James Norris" in Cleveland, Ohio, on or about May 9, 1963, and the indictment so charges. The request for the exact date and time is denied, as is the request for the exact location of the vessel at the time of the shooting, how many shots were fired, and what kinds of guns were used. These items are clearly evidentiary detail. In addition, defendants are not entitled to obtain the names and addresses of persons present at the commission of the offense. United States v. Giramonti, 26 F.R.D. 168 (D.Conn.1960); and see United States v. Bonnet, 247 F.Supp. 415 (E.D. La.1965); But cf. United States v. Birrell, 263 F.Supp. 113 (S.D.N.Y.1967).

There is no basis for defendants' request in item 24 for the time of day of the conversation between Chipman and Christine Plump, an unindicted co-conspirator, or for the substance of the conversation, or whether it was reduced to writing. These are patently evidentiary matters, and do not require a response. Also evidentiary are the method of travel as alleged in Overt Act No. 5, and whether anyone else was present during the trip (items 25 and 26). United States v. Giramonti, 26 F.R.D. 168 (D.Conn.1960). For the same reason item 27 is denied.

Item 28 refers to a conversation on or about June 5, 1963, between Pearl and an unindicted co-conspirator Guy Swadley, in Milwaukee, Wisconsin. (Overt Act No. 7). Since such conversation was evidently an integral part and element of the alleged conspiracy, defendants should be told if it is the Government's contention that someone else was present at the meeting, and if so, who. United States v. Covelli, 210 F. Supp. 589, 590 (N.D.Ill.1962). However, the remainder of item 28 is denied for the reasons given in connection with item 24. Item 29 is denied for the reason assigned in denying item 25. Items 30 and 31 are evidentiary and consequently not allowed.

In item 32, the Government is directed to furnish the address of Arthur H. Kalk, whose home was allegedly fired into by Cupp and Chipman on or about June 7, 1963 (Overt Act No. 10). Although perhaps evidentiary and not proper in this type of motion, it would be a proper subject of discovery under Rule 16, and so we direct the Government to supply the address.

The address, if known, of the place of meeting in Chicago might be important, and should be provided in item 33, as was directed in item 23. Item 34 is denied for the reason assigned to item 25. Items 35 and 36 are evidentiary. Item 37 is denied for the same reasons as items 24 and 25, and items 38 and 39 for the reason given in denying item 24. United

States v. Giramonti, supra. Items 40, 41 and 42 are evidentiary. *Giramonti* also dictates denial of items 43 and 45.

In item 44, defendant Pearl should be furnished with the name of the person with whom he telephonically communicated at the "Toledo Blade," if such person is known, United States v. Covelli, supra, but the remainder of the request is denied.

Items 45, 46, 47 and 48 are evidentiary. The Government should supply the names of whoever it is alleged was present, if anyone, at the conversation between Pearl and Cupp mentioned in Overt Act No. 29 (item 49), United States v. Covelli, supra, but the substance of the conversation, if known, should not be furnished. The same direction applies to items 51, 52 and 54, but item 50 is evidentiary. Item 53 is denied for the reasons assigned to items 24 and 25.

Items 55 and 56 are evidentiary, and items 57 and 58 are immaterial for the purpose of this motion. Item 75 is a duplication of item 58.

Item 59, which asks whether there was a fire on the vessel Howard L. Shaw, as alleged in Count II, is manifestly improper. The office of a bill of particulars is to advise the defendants as to the nature of the offenses charged, not as to the exact facts, which constitute evidence subject to proof. It should be enough, for purposes of preparing a defense, that the indictment in fact alleges that defendants set fire or attempted to set fire to the aforementiond vessel.

Item 60 is not only prohibited by *Giramonti*, supra, but is an indirect attempt to obtain the names of witnesses, barred to all defendants except those in capital cases. Item 62 is evidentiary and immaterial to the functions of this motion. If the Government knows with better approximation the dates between June 6 and September 6, 1963, when defendants transported explosives, it should furnish them in reply to item 64. See United States v. Tellier, 19 F.R.D. 164, 166 (S.D.N.Y.1956); United States v. Lopez, 26 F.R.D. 174, 175

(S.D.N.Y.1960). The names and addresses of those persons alleged to have been intimidated need not be supplied. But cf. *Blumenfield v. United States,* 284 F.2d 46, 49 (8th Cir. 1960); *Young v. United States,* 288 F.2d 398, 400, 109 U.S.App.D.C. 414 (1961). The offenses charged here are more numerous and complex that the ones alleged in *Blumenfield* (White Slave Act), and *Young* (assault with intent to rob), where the government was required to divulge the names of the alleged victims. In the circumstances of this case, where the offenses charged are not primarily ones directed against a single or specific victim, we believe the policy against disclosing the names of witnesses justifies denial of the defendants' request.

Item 65 and the first part of item 67 are evidentiary. Items 66 and 73 constitute an indirect attempt to obtain the names of witnesses and are denied.

■ Item 74 which asks who placed the bombs and explosives on the vessel Howard L. Shaw, asks for evidentiary facts and need not be answered at this time.

Item 76 is evidentiary, and item 77 is an indirect attempt to obtain the names of witnesses. Both are denied.

■ Although we have directed that the defendant be supplied the names of all persons present at *conversations specifically set forth in the indictment,* our rulings thereon are not support for defendants' request for the "names and addresses of all persons present during any conversations alleged or to be offered into evidence." This is a clear attempt to obtain the Government's evidence, the names of its possible witnesses, and to force it to reveal minute details of its case. Disclosure of persons present at conversations to be introduced at trial as distinguished from those conversations mentioned in the indictment, cannot help to make the indictment clearer or to more fairly apprise the defendants of the offenses charged. This request will be denied, and for the same reasons items 81 and 82 are denied.

■ As to item 80, we will direct the Government to supply the approximate time and date, the places, and the nature of any overt acts which were unknown at the time of the indictment but which the Government has subsequently discovered. Direct authority for such disclosure is provided by *United States v. Covelli,* 210 F.Supp. 589, 590 (N.D.Ill. 1962), and *United States v. Baker,* 262 F.Supp. 657, 675 (D.D.C.1966). The names of persons present should not be furnished. *United States v. Giramonti, supra.*

■ From the above, it is obvious that the Court has expended much needless time in providing particulars to the defense, which under the new expanded rules, the Government counsel should have and could have provided to defendants. The policy seemingly current in the United States Attorney's Office, of almost invariably denying requests for bills of particulars and motions for discovery, in toto, needs re-examination. Even in a situation where 82 separate requests are included in a motion for a bill of particulars, the Government has the duty to proffer those which are proper and appropriate, rather than being content to argue that the bill seeks a mass of evidentiary material, and shifting the burden to the court to sift the wheat from the chaff. Although many of the above requests made by the defendants were improper, which the experienced lawyers for the defendants should have known, a significant number asked for things which defendants should have been given under the liberalized standards of Rule 7(f).

■ We think the Government should be prepared to fulfill its duties and should tender proper information upon request in motions like the instant one. We have made clear that this Court intends to comply with the full letter and spirit of amended Rule 7(f), and indeed has subscribed to its philosophy long before it was enacted. Blanket refusals to supply particulars or discovery without legal justification, and compelling trial courts to sift through a series of requests

such as we have done in the case at bar, is a pure waste of judicial manpower and hours, and is not in the best interests of proper judicial administration. We invite the Government to reevaluate its thinking in this area, and the same is true as it applies to the experienced lawyers for defendants in this case who made requests that they should have known could not be granted under the rules, statutes, and case law. This Court will seek to remedy this situation in the future by requiring attorneys on both sides to confer prior to the filing of defendants' motions for discovery and the like, and file a statement such as Rule 12(d) of our local civil rules [14] provides.

### 7. Motion to Suppress Evidence Obtained by Electronic Eavesdropping

██ Pursuant to Rule 41(e), the defendants move to suppress all evidence obtained against them by means of electronic eavesdropping. In order for us to consider this motion at a proper hearing under the rule, it is incumbent upon the defendants to make a showing that the Government indulged in wiretapping or electronic eavesdropping and that such conduct was illegal. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Casanova, 213 F.Supp. 654 (S.D.N.Y. 1963); United States v. Pardo-Bolland, 229 F.Supp. 473, 474, 475 (S.D.N.Y. 1964). Defendants apparently do not dispute that rule of law, and in support of their motion submit the following unsworn statement in their brief:

"In support of this motion and as grounds for the belief that these defendants have been the objects of use of the devices mentioned above, by agents of the Federal Bureau of Investigation and other governmental agency, the defendants state that the subject matter of this indictment has been the subject of frequent articles in the press of this city and the return of the indictment resulted in extensive press releases for the offices of the United States Attorney and editorial comment of various newspapers of the City of Chicago.

"In view of the apparent importance in the eyes of the prosecutors and the newspapers and the Federal Bureau of Investigation, and in view of reported cases of admitted unlawful eavesdropping by agencies of the United States Government, the defendants and their counsel believe that they were the subjects and objects of such microphones, eavesdropping, telephonic interception and use of other devices for message interception.

"It is alleged that this practice by the agencies is so well known, and is so acknowledged by the Department of Justice in various reported decisions, that it is incredible that such electronic eavesdropping and interception was not practiced or attempted in investigation of the defendants."

As the Government suggests, the type of showing attempted here is virtually identical to the one presented by the defendant Battaglia in United States v. Amabile, et al., No. 67 CR 85 (N.D.Ill. 1967) (No. 16312 on current appeal to the Seventh Circuit), where our brother Judge Hoffman denied the motion to suppress, for the following cogent reasons:

"It is my view that the defendant must make an adequate showing in his motion to suppress so that the issues are properly raised. The defendant has submitted no affidavit in support of his conclusion that he was a victim of electronic eavesdropping. He offers

---

14. Rule 12(d) provides:
"To curtail undue delay in the administration of justice, this Court shall hereinafter refuse to hear any and all motions for discovery and production of documents under Rules 27 through 37 of the Federal Rules of Civil Procedure, unless moving counsel shall first advise the Court in writing that after personal consultation and sincere attempts to resolve differences they are unable to reach an accord. This statement shall recite, in addition, the date, time, and place of such conference, and the names of all parties participating therein."

only his own conclusion based on alleged newspaper publicity, his own alleged background, and the government's alleged evident interest in him. Such a showing would not suffice on a motion for a hearing to suppress unspecified evidence obtained by wire tapping. See 47 U.S.C.A. Section 605, United States v. Pardo-Boland, 229 F. Supp. 473, District Court of New York, 1964.

"Therefore, the motion to suppress unspecified evidence obtained through electronic eavesdropping and the motion to hold a hearing to this end will be denied."

(Transcript of Proceedings, April 7, 1967, p. 20–21.)

 Such a showing as is made by the instant defendants is indeed founded on no more than conjecture and surmise, and is insufficient to warrant the grant of a hearing on a motion to suppress. As Judge MacMahon said in United States v. Pardo-Bolland, supra at 475:

"The court declined to hear evidence upon the claimed violation of the Communications Act. There is no possible justification for burdening this congested court with a hearing which may ultimately prove to be academic. Even if we assume that the government did engage in wiretapping, it may never use evidence so obtained or any fruits of the poisoned tree. At this stage, the motion is at best hypothetical. The issue cannot be decided until all the relevant facts are before the court upon or after the trial.

"Accordingly, the application is denied as premature * * * (citing cases). In any event, the moving affidavit by defendant is so lacking in specific statements of evidentiary facts that it fails to raise an issue. * * * The burden is upon the defendant to estab-

lish that his wires have been tapped * * * (citing cases). That burden requires allegations of evidentiary facts *upon personal knowledge, or at least disclosure of the sources of the deponent's information and the grounds for his belief,* to support a demand for a hearing. * * * Otherwise, the government's case would be prematurely exposed and the court burdened with hearing nothing but a stark fishing expedition by the defendant. * * *" (emphasis added)

Like in the *Bardo-Bolland* case, the present motion is at best premature. Should the defendants be capable of making a more convincing showing in support of their motion at a later date, we would certainly give them the opportunity to make their presentation by way of sworn affidavits. Indeed, should it develop at trial that evidence possessed by the Government may have been obtained in violation of defendants' constitutional rights, the defense will be given the opportunity to conduct inquiry during the course of the trial, out of the presence of the jury, to the degree deemed reasonable by the court. See United States v. Baker, 262 F.Supp. 657, 667 (D.D.C.1966). Accordingly, defendants' motion to suppress is denied at this time. For the same reasons, item 7 in defendants' motion for discovery and inspection is also denied.

The Justice Department's policy on this issue is noted,[15] and we are confident that the Government prosecutors herein, who are able, dedicated, and of the highest standards of integrity, will adhere to that policy.

8. *Motion to Disclose Evidence Favorable to Defendants*

The Government states that it has no evidence at this time which it considers favorable to the defendants. It recognizes its responsibility to comply with the

15. See Black v. United States, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966); O'Brien v. United States, (March 20, 1967), 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94; Schipani v. United States, 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed.2d 428.

relevant decisions in this area [16], and states that it will do so.

9. *Petition for a List of Witnesses*

Since this is a non-capital case, defendants are not entitled to a list of witnesses. However, we urge the Government to furnish whatever names it can, in good conscience, and caution so as to further the dictates of convenience and expedition.

10. *Defendants' Motion to Suppress Confession*

The Government represents that it does not have in its possession any confessions made while any of the defendants presenting this motion were either in custody or under arrest.

16. E.g. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).